# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00573-CR

**Luis Felipe Rodriguez, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
### NO. 0793273, HONORABLE SHERRY L. HILL, JUDGE PRESIDING

Appellant Luis Felipe Rodriguez, Jr. appeals his conviction for operating a motor vehicle while intoxicated, misdemeanor repetition. *See* Tex. Pen. Code Ann. '' 49.04, .09(a) (West Supp. 2002).[1] The jury found appellant guilty and the trial court assessed his punishment at forty-five days= confinement in the county jail and a fine of $1,000.

### Point of Error

Appellant advances a sole complaint on appeal. He contends that the trial court erred in including in the jury charge, over objection, a portion of the *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), definition of reasonable doubt when that portion of *Geesa* had been overruled by *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). We will affirm the trial court=s judgment.

### Information

---

[1] These statutes refer to the offense as Aoperating@ rather than Adriving@ while intoxicated. The word Adriving@ is no longer found in the body of the involved statutes.

The information alleged that appellant on or about January 2, 2001, operated a motor vehicle while intoxicated in a public place while Anot having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body.@ The enhancement paragraph alleged a prior misdemeanor conviction for operating a motor vehicle while intoxicated in Bexar County on April 3, 2000.

## Facts

Neither the legal nor factual sufficiency of the evidence is challenged. Briefly, the facts show that in the early morning hours of January 2, 2001, Brian Brindley, a firefighter EMT, was on his way home from work. A silver BMW automobile being driven erratically on Interstate 20 in Tarrant County, almost ran Brindley=s vehicle off the road. Another minivan was forced off the road. Brindley followed the BMW while calling 911 on his cell phone to report a possible intoxicated driver. Brindley observed the BMW being driven erratically from one lane to another and varying its speed from eighty miles per hour to twenty miles per hour. After following the car for ten miles, Brindley saw the BMW stop on the shoulder of the road. Brindley stopped, approached the BMW, and opened the car door. Appellant was behind the wheel and was alone. Appellant denied driving erratically or drinking alcohol. Appellant=s speech was slurred, and he thought he was still in Plano. Based on his EMT experience, Brindley did not observe anything medically wrong with appellant.

Chris Bardwell, an off-duty Grand Prairie police officer, saw Brindley following the BMW, which was weaving in and out of its lane of traffic and varying its speed. Bardwell also notified several police dispatchers of a possible intoxicated driver. Bardwell stopped and parked behind Brindley.

Arlington Police Officer Christopher Caballos arrived on the scene where appellant, Brindley, and Bardwell were parked. When appellant got out of the BMW, he swayed, was unsteady on his feet, had the smell of an alcoholic beverage on his breath, and had bloodshot eyes. Appellant failed all three field sobriety tests that he was asked to perform. In Officer Caballos=s opinion, appellant was intoxicated. He was arrested.

A videotape was taken of appellant at the Arlington city jail approximately thirty minutes after his arrest. The videotape was introduced at trial. On cross-examination, Caballos testified that appellant was required to place his feet in certain designated footprints for the purpose of the tape. The record reflects:

Q. Okay. And his feet are close together. And the jury can see that he is not swaying at all on those lines, right?

A. He does pretty good, yes, sir.

Appellant claims that the evidence shows a conflict as to whether he was intoxicated while operating the BMW. At the close of the guilt/innocence stage of the trial, the trial court included in its jury charge the following:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or otherwise charged with the offense, gives rise to no inference of guilt at his trial. The law does not require the defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant=s guilt after careful and impartial consideration of all the evidence in the case.

3

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

**It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution=s proof excludes all Areasonable doubt@concerning the defendant=s guilt.**

In the event that you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant and say by your verdict Anot guilty.@

(Emphasis added)

Appellant expressly objected to the giving of the third paragraph above in bold print. The trial court was told that the objected-to paragraph had been a part of the *Geesa* definition of reasonable doubt and that *Geesa* in this regard had been overruled by *Paulson*. Appellant=s objection was overruled.

**Discussion**

ADespite its early use in American jurisprudence, the phrase >reasonable doubt= appears in neither our federal nor state constitutions.@ *Paulson v. State*, 991 S.W.2d 907, 911 (Tex. App.CHouston [14th Dist.] 1999), *rev=d on other grounds*, *Paulson*, 28 S.W.2d 570; *see also In re Winship*, 397 U.S. 358, 377 (1970) (Black, J., dissenting).

We know, of course, that the due process clause of the Fourteenth Amendment to the United States Constitution protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Winship*, 397 U.S. at 364. Although the Abeyond a reasonable doubt@standard is a requirement of due process, the federal constitution

**4**

neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of

course. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). Moreover, the United States Constitution does not

require that any particular form of words be used in advising the jury of the prosecution=s burden of proof.

Rather, the jury instructions taken as a whole must correctly convey the concept of reasonable doubt to the

jury. *Id*.[2]

Article 2.01 of the Texas Penal Code provides:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

---

[2] In only one case has the United States Supreme Court held that a definition of reasonable doubt in jury instructions violated the due process clause. *Cage v. Louisana*, 498 U.S. 39, 41 (1990). There, the Court held that the particular instruction would have allowed the jury to base its verdict on a degree of proof below that required by the due process clause. *Id.*

Tex. Pen. Code Ann. ' 2.01 (West 1994). The identical language is found in the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.03 (West Supp. 2002). Despite different language in the past, these statutes and their forerunners[3] have been substantially the same. *See Aston v. State*, 656 S.W.2d 453, 456-58 (Tex. Crim. App. 1983). Neither section 2.01 nor article 38.03 define Areasonable doubt@ for the purpose of the statute or for either code nor did their statutory forerunners do so. In the absence of special definitions, statutory language can be measured by common understanding and practices or construed in the sense generally understood. *See Ex parte Anderson*, 902 S.W.2d 695, 699 (Tex. App.CAustin 1995, pet. ref=d). Statutory words are to be read in context and construed according to the rules of grammar and common usage. *See* Tex. Gov=t Code Ann. ' 311.011(a) (West 1998). Words and phrases that have acquired a technical or particular meaning by legislative definition or otherwise shall be construed accordingly. *See* Tex. Gov=t Code Ann. ' 311.011(b) (West 1998).[4]

Long prior to *Winship*, a criminal defendant in Texas was entitled *by statute* to a jury charge on proof of guilt beyond a reasonable doubt. *McCracken v. State*, 330 S.W.2d 613, 614 (Tex. Crim. App. 1960), held that a defendant was deprived of Aa valuable right conferred by statute@ when the

---

[3] The forerunners to section 2.01 are discussed in *Paulson v. State*, 991 S.W.2d 907, 911 (Tex. App.CHouston [14th Dist.] 1999), *rev=d on other grounds, Paulson v. State*, 28 S.W. 570 (Tex. Crim. App. 2000).

[4] The Texas Legislature has not defined the term Areasonable doubt@ and it was not until 1991 that the Court of Criminal Appeals adopted a definition for the term. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). *Geesa=s* definition has now been overruled by *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

jury charge failed to apply the law of reasonable doubt in submitting the case to the jury despite a special requested charge. The cause was reversed.[5]

Although a criminal defendant is entitled by statute to have the law of reasonable doubt applied in the jury charge or instructions, he was not always entitled to have the term defined. *See Pigg v. State*, 287 S.W.2d 673, 674 (Tex. Crim. App. 1956). AThe charge on reasonable doubt should be given in the language of the statute; attempts to amplify it, explain it or belittle it almost invariably lead to a reversal.@ 1 A. R. Stout, *Branch=s Anno. Penal Code* ' 16 (2d ed. 1956) (citations omitted); *see also Whitson v. State*, 495 S.W.2d 944, 946 (Tex. Crim. App. 1973).

Prior to the 1991 decision in *Geesa* and for well over a century, Texas trial courts normally did not define Areasonable doubt@ in jury charges. *See McGinty v. State*, 723 S.W.2d 179, 721 (Tex. Crim. App. 1986). This is not to say from time to time there were not definitions of Areasonable doubt@ submitted to juries, but these were not usually approved. *See generally* Craig Hemmens et al., A*Doubt Over Reasonable Doubt In Texas*,@ 59 Tex. Bar. J. 130 (Feb. 1996). In *Abram v. State*, 35 S.W. 389, 390 (Tex. Crim. App. 1896), the trial court gave a definition of reasonable doubt which included the phrase that A[t]he mere possibility that the defendant may be innocent will not warrant an acquittal upon the ground of reasonable doubt.@ The court reversed the conviction pointing out that the trial court had done Aits whole duty@ if it charged the jury in the language of the statute on reasonable doubt. The court added, AIt is not

---

[5] The statute mentioned in *McCracken* was article 705 of the 1925 Code of Criminal Procedure, a forerunner of article 38.03.

proper for the court to discuss what the reasonable doubt is . . . . The jury is as competent to determine

that as the court.@ *Id*. at 390; *see also Marshall v. State*, 175 S.W. 154, 155 (Tex. Crim. App. 1915).

And it was frequently held that it was not error for the trial court to refuse to define Aproof beyond a

reasonable doubt@ even when a request was made. *See Marquez v. State*, 725 S.W.2d 217, 241 (Tex.

Crim. App. 1987).

## The *Geesa* Decision

On November 6, 1991, however, the Court of Criminal Appeals in *Geesa* adopted a

definition of proof beyond a reasonable doubt[6] and required that it be given Ain all criminal cases, even in the

---

[6] The *Geesa* definition of reasonable doubt required to be given in all jury charges and instructions provided:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant=s guilt after careful and impartial consideration of all the evidence in the case.

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

> It is not required that the prosecution prove guilt beyond all doubt; it is required that the prosecution=s proof excludes all Areasonable doubt@ concerning the defendant=s guilt.

> A Areasonable doubt@ is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important

absence of an objection or request by the State or the defendant, whether the evidence be circumstantial or direct.@ *Geesa*, 820 S.W.2d at 162. In *Reyes v. State*, 938 S.W.2d 718, 720-21 (Tex. Crim. App. 1996), the Court held that the above described holding in *Geesa* created an Aabsolute systemic requirement@ that cannot be waived or forfeited or be subject to a harm analysis in a case where the *Geesa* definition was totally omitted.[7]

## The *Paulson* Decision

In *Paulson*, the defendant was charged with misdemeanor theft of a wheeled barbeque pit. The trial court instructed the jury that the proof of guilt was the State=s burden Abeyond a reasonable doubt@ but totally omitted the *Geesa* definition. There was no objection. On appeal, the Fourteenth Court

---

of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

In the event you have a reasonable doubt as to the defendant=s guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict Anot guilty.@

*Geesa*, 820 S.W.2d at 162.

[7] However, in later cases, where only a partial but substantially correct *Geesa* charge defining reasonable doubt was given without objection or where there was an unintended omission of a phrase in the *Geesa* definition, a harm analysis was held permissible under article 36.19 of the Code of Criminal Procedure and *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). *See State v. Toney*, 979 S.W.2d 642, 644-45 (Tex. Crim. App. 1998) (only first three paragraphs of the *Geesa* definition submitted); *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).

of Appeals on the basis of *Geesa* and *Reyes* dutifully but reluctantly found automatic reversible error.@

*Paulson v. State*, 991 S.W.2d 907, 917 (Tex. App.CHouston [14th Dist.] 1999), *rev=d*, 28 S.W.3d 870

(Tex. Crim. App. 2000).[8]

Petition for discretionary review was granted in *Paulson*, and the Court of Criminal

Appeals overruled *Ruiz* in its entirety and overruled *Geesa* insofar as that decision required trial courts to

instruct juries on the mandated definition of Areasonable doubt.@ *Paulson*, 28 S.W.3d at 573.

The *Paulson* court wrote:

Our decision in *Geesa* requiring trial courts to instruct juries on the definition of reasonable doubt was poorly reasoned.

* * *

If a conscientious juror reads the *Geesa* charge and followed it literally he or she will never convict anyone.

* * *

It is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* precedent discourages it.

*Id*. at 572-73. The *Paulson* opinion further added:

---

[8] The Court of Appeals, speaking through Justice J. Harvey Hudson, reviewed at length the history of the use of the term Areasonable doubt@ in jury instructions and the controversy over defining the term.

We find that the better practice is to give no definition of reasonable doubt at all to the jury. On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement.

*Id.* at 573.

*Paulson* returned Texas law to its pre-*Geesa* conditionC Ait is not error to refuse to define reasonable doubt.@ 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 36.34 (2d ed. Supp. 2002).

The Abetter practice@ language is a word to the wise. Like the pre-*Geesa* law, it discourages any definition of Areasonable doubt@ being given but encourages the issue be submitted to the jury in the language of the statute. The Abetter practice@ language leaves the impression of a Aless than better practice,@ including a definition of Areasonable doubt@ that would pass muster. The *Paulson* court was obviously indicating it was not going to the opposite extreme of the *Geesa* and *Reyes* cases.

This indication is reinforced by the second sentence in the quotation above although the wording of the sentence is somewhat confusing. It seems to say that reversible error will not result if the discredited *Geesa* definition is submitted after both parties agree and the trial court approves. The lack of reversible error may well turn on the appealing party=s agreement to submit the *Geesa* definition constituting a waiver of any complaint on appeal. It is not likely that the *Geesa* definition will be given too frequently in view of its nature and the requirements imposed. Prosecutors will not be inclined to agree to give a

**11**

definition that is redundant, confusing, logically flawed, and which if read literally would cause conscientious jurors to acquit. Trial courts will be reluctant to put a seal of approval on such agreements.

### *Phillips v. State*

Before applying *Paulson* to the instant case, we observe its application in a recent case with some similar features to our case. *See Phillips v. State*, 72 S.W.3d 719 (Tex. App.CWaco 2002, no pet.). In *Phillips*, the trial court gave only a portion of the *Geesa* definition:

It is not required that the prosecution prove guilt beyond all doubt. It is required that the prosecution=s proof exclude all reasonable doubt concerning the defendant=s guilt.[9]

*Id*. at 721. The defendant objected only to the first sentence. *Id*. The *Phillips* opinion does not state, but we shall assume for our discussion, that reasonable doubt was also submitted to the jury in the language of the statutes. Likewise, the opinion does not state the date of the trial so we are unable to assay any retroactive issue. When *Paulson* overruled *Geesa*, it did not address the retroactivity of its decision[10] as *Geesa* did in 820 S.W.2d at 165.

Under any circumstances, the Waco Court of Appeals applied *Paulson*. The court found that A[b]ecause the Court of Criminal Appeals was clear on the point B give it all if the parties agree or give

---

[9] The *Phillips* charge is the same as the instant case except the word Apossible@ is missing between Aall@ and Adoubt@ in the first sentence in the *Phillips* charge.

[10] The *Paulson* decision applied retroactively to *Paulson=s* trial since otherwise there would have been no case or controversy permitting the *Paulson* decision to be made by the Court of Criminal Appeals. 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 36.14 (2d ed. Supp. 2002).

**12**

none of it B we hold that it was error to give part of the *Geesa* instruction in the absence of an agreement.@

The *Phillips* court determined, however, that the error was harmless.  *Id.*

The instant cause was tried after the *Paulson* decision.  The retroactivity issue is not involved.  Cases such as *Bordman v. State*, 56 S.W.3d 63 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d), and *Colbert v. State*, 56 S.W.3d 857 (Tex. App.CCorpus Christi 2001, pet. granted), hold that *Paulson* is to be applied to cases pending on appeal at the time of that decision.  *See also State v. Arroya*, 32 S.W.3d 868 (Tex. Crim. App. 2000).  These cases are little or no assistance to our discussion.  *Cf.*Dix, ' 36.34.

## *Paulson* and the Instant Case

In the instant case, the trial court, as earlier noted, charged on the presumption of innocence and the required proof of each element of the offense beyond a reasonable doubt in the language of section 2.01 of the Penal Code and article 38.03 of the Code of Criminal Procedure. The trial court then added: **AIt is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution=s proof excludes all >reasonable doubt= concerning the defendant=s guilt.@** This charge was part and parcel, the third paragraph, of the discredited *Geesa* definition of reasonable doubt but not one of the three formulations contained therein.[11]

---

[11] The three formulations were the Abased on reason and common sense@ language, the language of Ahesitate to act in the most important of his own affairs,@ and the language of Awilling to rely and act upon without hesitation in the most important of your own affairs.@ The latter two formulations may appear similar but are contrasting. The Awilling to act without hesitation@ definition of reasonable doubt suggests *action,* while the Ahesitate to act@ suggests *inaction. See* Craig Hemmens et al., *Doubt Over Reasonable Doubt In Texas,* 59 Tex. Bar. Journal 130, 139 (Feb. 1996).

On appeal, appellant relies on *Paulson* as he did in the trial court and contends that none of the *Geesa* definition should have been given. The State does not dispute the *Geesa* connection but urges that the instruction itself was not a definition of reasonable doubt. The first sentence of the complained-of instruction has been commonly used in voir dire examinations of jury panels, even in pre-*Geesa* times. It does, however, state what reasonable doubt is not, and in this sense, is definitional. The second sentence is redundant in cases where the trial court has followed the Abetter practice@ and has submitted the issue of reasonable doubt in the language of the statutes without a definition.

We do not fully agree with the Waco Court of Appeals in *Phillips* that any extraction from the *Geesa* definition is erroneous in the absence of an agreement, or it must be given that *Paulson* has mandated that if the *Geesa* definition is to be given by agreement that all of the definition had to be in entirety. Such an interpretation would forestall any acceptable version of a reasonable doubt instruction from being submitted, in the absence of an agreement, if the instruction, or any part thereof has a *Geesa* connection. We do not give *Paulson* such a strict construction. Nevertheless, attempts to define reasonable doubt do not usually make it clearer in the minds of the jurors, often they tend to impermissively increase or lessen the burden of proof or utilize additional terms which themselves require definition. *See Paulson*, 991 S.W.2d at 912. It has been said that Aany use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire.@ *Id*. (quoting *United States v. Langer*, 962 F.2d 592, 600 (7th Cir. 1992)).

Although the complained-of instruction in the instant case does not appear to be too intrusive upon the Abetter practice,@ we conclude that it should not have been given over objection.

## Harmless Error

Error in a jury charge, if timely objected to in the trial court, requires reversal if the error resulted in some harm, *i.e.*, if the error was calculated to injure the defendant=s rights. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh=g).

The actual degree of harm Amust be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.@ *Saunders v. State*, 817 S.W.2d 688, 690 (Tex. Crim. App. 1991) (quoting *Almanza*, 686 S.W.2d at 171). Appellant has the burden to show that he suffered some actual harm from the charge error, and if he fails in this endeavor, the error will not require reversal. *Abdnor*, 871 S.W.2d at 732.

The evidence was overwhelming that appellant was intoxicated while operating a motor vehicle. The only bright spot for appellant was the arresting officer=s acknowledgement that the videotape taken some time later did not show appellant swaying at that time.

During the voir dire examination of the jury panel, the trial court and each of the parties explained that the State=s burden of proof was beyond a reasonable doubt without a specific definition of the term. Appellant=s counsel further explained that the State=s burden was a higher burden than Aby a preponderance of the evidence@ or Aby clear and convincing proof.@ Further, the jury panel agreed with

appellant=s counsel that there should not be a lower standard in criminal cases than beyond a reasonable doubt, and to be fair, jurors had to be Avery sure@ the State had proved its case before conviction.

In its jury charge, the trial court instructed the jury that the burden of proof was on the State to prove guilt Abeyond a reasonable doubt.@ The trial court, of course, also gave the complained-of instruction. That charge, however, was never mentioned in jury argument. After an examination of the entire record, we conclude that the error in the jury charge was not calculated to injure appellant=s rights.

The sole point of error is overruled. The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion[*]

Affirmed

Filed: July 26, 2002

Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).