PD-0585-15

PD-0585-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/22/2015 2:52:53 PM
Accepted 5/26/2015 10:06:28 AM
ABEL ACOSTA
CLERK

# THE COURT OF CRIMINAL APPEALS OF TEXAS

**Appeal from the Court of Appeals for the
Fourth District of Texas, at Bexar County, Texas
Cause No. 04-14-00115-CR
AND**

**227th District Court of Bexar County
Case No. 2012-CR-4029B**

**LLOYD RECTOR, Petitioner**

**vs.**

**THE STATE OF TEXAS, Respondent**

# PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

THE LAW OFFICES OF
HOWELL & SABRIN
Caitlin B. Howell
State Bar No. 24069954
Adam Jason Sabrin
State Bar No. 24070542
115 E. Travis
Suite 1500
San Antonio, Texas 78205
Phone: (210) 875-5452
Fax: (210) 587-2460

Attorneys for Petitioner

## PARTIES TO THE CASE

**The parties to this case are as follows:**

**Representing the State of Texas, Plaintiff, at Trial:**

MEREDITH M. CHACON
Assistant District Attorney, Bexar County
Paul Elizando Tower I
101 W. Nueva, Suite 370
San Antonio, Texas 78205

ZACHARY CHARLES EDWARDS
Assistant District Attorney, Bexar County
Paul Elizando Tower I
101 W. Nueva, Suite 370
San Antonio, Texas 78205

> **Representing the State of Texas, Appellee, on Appeal:**
> JAY BRANDON
> Paul Elizando Tower I
> 101 W. Nueva, Suite 370
> San Antonio, Texas 78205

**Representing Lloyd Rector, Defendant, at Trial:**

JOSEPH HOELSCHER, II
HOELSCHER LAW FIRM
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205

JAMES ANDERS III
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205

> **Representing Lloyd Rector, Appellant, on Appeal:**
>
> JOSEPH HOELSCHER, II
> HOELSCHER LAW FIRM
> 115 E. Travis Street, Suite 1500
> San Antonio, Texas 78205
>
> CAITLIN B. HOWELL
> THE LAW OFFICES OF HOWELL & SABRIN
> 115 E. Travis Street, Suite 1500
> San Antonio, Texas 78205

ADAM SABRIN
THE LAW OFFICES OF HOWELL & SABRIN
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205

The Honorable George H. Goodwin presided at trial in the 227th Judicial District Court, Bexar County, San Antonio, Texas.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

INDEX OF AUTHORITIES...............................................................................ii - iii

STATEMENT REGARDING ORAL ARGUMENT ........................................................ 1

STATEMENT OF THE CASE ..................................................................................... 1

STATEMENT OF PROCEDURAL HISTORY............................................................. 1

QUESTIONS PRESENTED FOR REVIEW ................................................................. 2

ARGUMENT ........................................................................................................2-10

CONCLUSION ................................................................................................... 10-11

PRAYER............................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................. 12

APPENDIX   Attached

**INDEX OF AUTHORITIES**

**CASES**

*Blue v. State*, 41 S.W.3d 129 (Tex.Crim. App. 2000)……………………….……....6, 10

*Bollenbach v. United States,* 326 U.S. 607 (1946)…………………..……….6

*Cage v. Louisiana*, 498 U.S. 39 (1990)………………….………..…….5-6, 7, 8

*Colbert v. State*, 56 S.W.3d 857 (Tex.App-Corpus Christi 2001) ………..……7

*Estelle v. McGuire*, 502 U.S 62 (1991) ……………………..……..…..6

*Fuentes v. State*, 991 S.W.2d 267, 273 (Tex.Crim.App. 1999)……………..7

*Garcia v. State*, 246 S.W.3d 121 (Tex.App.-San Antonio 2007). ……….…..7

*Hardman v. Dault*, 2 S.W.3d 378 (Tex.App.-San Antonio 1999, no pet.)…...….9

*Hicks v. United States,* 150 U.S. 442 (1893)………………….…….…..6

*Holland v. United states*, 348 U.S. 121 (1954) ……………….….…...4

*Krishnan v. Ramirez*, 42 S.W.3d 205 (Tex.App.-Corpus Christi 2001, pet. denied)……...….9

*Latson v. State*, 440 S.W.3d 119 (Tex.App.-Houston [14[th] Dist.] 2013, no pet)..……7

*Paulson v. State*, 26 S.W.3d 570 (Tex.Crim.App. 2000) …………………..…..4, 5, 8

*Rodriguez v. State*, 96 S.W.3d 398 (Tex.App.-Austin 2002) ……………….5

*Starr v. United States,* 153 U.S. 626 (1894)……………………………...6

*United States v. Langer*, 962 F.2d 592 (7th Cir. 1992) …………………….5

*Victor v. Nebraska*, 511 U.S. 1 (1994) ……………………..………..……. 4

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. AMEND. V………………………………..…………..…..7

U.S. CONST. AMEND. XIV……………………………………….…..…..7

ii

## STATUTES AND CODES

TEX. PENAL CODE § 29.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

TEX. R. APP. P. 66.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner respectfully requests oral argument, to assist the Court with the interpretation and construction of the cases, statutes, regulations and other authorities pertinent to the constitutional issues in the case.

## STATEMENT OF THE CASE

Petitioner Lloyd Rector ("Rector") is a resident of San Antonio, Texas. On February 16, 2014, Rector was walking in a neighborhood with known drug activity, when he was stopped and questioned by police as to his presence in the area, due to several break-ins there. The officer was satisfied with Rector's explanation that he was not breaking into homes and released him. At some time thereafter, the officer was called to the scene of a robbery at a nearby house which may or may not have been selling illegal narcotics. The witnesses refused to give a statement and did not wish police to investigate further until several weeks later. Based only on the description of a dark-skinned black man having been present at the robbery, the police located Rector and questioned him. He admitted to having been at the house earlier, but denied involvement in the robbery. The second robber, whom the victim clearly identified – having gone to school with him – denied knowing Rector at all, though Rector admitted to knowing him.

## STATEMENT OF PROCEDURAL HISTORY

Lloyd Rector was accused of aggravated robbery by indictment on February 16, 2012. Rector entered a plea of Not Guilty and proceeded to trial. He was found guilty of aggravated robbery with a deadly weapon, a firearm, on December 6, 2013 and sentenced to 20 years in a

1

Texas Department of Corrections facility. (1 C.R. 108-110)[1]. He timely filed a Motion for New Trial which the 227th refused to hear, citing that it had to be heard by the visiting judge, and was therefore overruled by operation of law. (1 C.R. 114-117). His Notice of Appeal was timely filed. (1 C.R. 112-113). Rector filed an appeal, and the Court of Appeals issued and Opinion and Judgment on April 15, 2015 denying Rector relief.

## QUESTIONS FOR REVIEW

1.      Did the Fourth Court of Appeals err when it found that the trial court's definition of "beyond reasonable doubt" given to the venire panel at the beginning of trial, in conjunction with the trial court's statement that the jury charge they would receive would not be helpful, was not an abuse of discretion?

2.      Did the Fourth Court of Appeals err when it held that the Defendant waived his objection and thus preservation of error to the trial court's sustaining the state's objection to his attempt correcting the court's definition of beyond reasonable doubt during *voir dire*?

## ARGUMENT

Review is necessary pursuant to TEX. R. APP. PROC. 66.3(b) because the Court of Appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals.  The Court of Criminal Appeals should grant discretionary review of the erroneous decision by the Court of Appeals because Rector's fundamental due process right to be found guilty *only* by the highest standard of evidence was violated.

---

[1] Citations to the appellate record are designated as follows:  CR refers to the Clerk's Record;; RR refers to the Reporter's Record.

## 1. Facts

Lloyd Rector was accused of aggravated robbery by indictment on February 16, 2012. He was found guilty of aggravated robbery with a deadly weapon, a firearm, on December 6, 2013 and sentenced to 20 years in a Texas Department of Corrections facility. (1 C.R. 108-110).

At trial, during the trial court's *voir dire* of the venire panel he stated as follows:

THE COURT: "Let's talk about reasonable doubt. I'm going to offer up a definition in a minute. I stole it from a prosecutor 30 years ago. And the reason I did that is because he had a way to define it that I couldn't say it in better than that. You're going to get a definition in the Court's charge. The definition goes something along the lines of, It's not beyond all doubt but beyond a reasonable doubt. I'm not sure how helpful that is.

My definition that I borrowed is if you go back there in the jury room and you think the Defendant is probably guilty, that's not proof beyond a reasonable doubt. If you go back there in the jury room and you're convinced in your heart and in your mind, that is proof beyond a reasonable doubt.

All right, that's the burden."
(2 R.R.at 41).

Immediately following the trial court's statement, Defense counsel objected and his objection was overruled by the Court. *Id.*

"MR. HOELSCHER: Judge I have to object. That's not a proper statement of the law.

THE COURT: Your objection will be overruled." *Id.*

When Defense counsel attempted to explain that "when someone says you got to be convicted in your heart, in your mind– that's not beyond a reasonable doubt," the State objected to Defense explaining why that was not the definition of the standard of proof, "Judge, I'm going to object to getting into the definition and misstating the law beyond a reasonable doubt," confirming that they believed it to be an accurate statement of the law and that State and Defense were not in agreement. (2 R.R. 117). The trial court instructed Defense to rephrase what he was saying. *Id.*

**2. The Fourth Court of Appeals erred when it found that the Trial Court's Definition of "beyond a reasonablr doubt" given during *voir dire* and in conjunction with reference to the jury charge they would later receive did not constitute reversible error.**

Rector was found guilty of Aggravated Robbery with a Deadly Weapon by the jury who were given a definition of the õbeyond a reasonable doubtö standard by the Trial Court Judge during *voir dire* that impermissibly lowered the burden of proof required by the State to prove. In doing so the Trial Court abused its discretion and violated Rectorøs Due Process rights under the Fourteenth Amendment of the United States Constitution.

**A. Definition of Beyond A Reasonable Doubt**

õThe beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.ö *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). The Constitution does not require that any particular form of words be used in advising the jury of the governmentøs burden of proof, *see Id.*, but õrather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.ö *Holland v. United states*, 348 U.S. 121, 140 (1954).

Both this Court and the United States Supreme Court have similarly stressed the importance of protecting a defendantøs right to Due Process under the õbeyond a reasonable doubtö standard as well as the difficulty in defining the standard. *See Paulson v. State*, 28 S.W.3d 570, 575-576 (Tex.Crim.App. 2000). In *Paulson*, this Court explained that upon review of the United States Supreme Court cases *Jackson v. Virginia* and *Holland v. United States*, there existed no explicit support for the instruction or definition of reasonable doubt. *See Id.* At 575 (referencing *Jackson v. Virginia*, 443 U.S 307 (1979) and *Holland v. United States*, 348 U.S. 121 (1954)). This Court

stated that, in fact, "it is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically flawed definition when the Constitution does not require it. *Paulson*, 28 S.W.3d at 573. Emphasizing the danger of defining reasonable doubt, in *Rodriguez v. State* the court stated that "it has been said that "any use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire." *Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex.App.-Austin 2002)(quoting *United States v. Langer*, 962 F.2d 592, 600 (7th Cir. 1992)).

The United States Supreme Court has also identified when the mere language used by a court to define reasonable doubt violates a defendants Due Process rights under the Fifth and Fourteenth Amendments. U.S. CONST. AMEND. V, XIV; *see Cage v. Louisiana*, 498 U.S. 39, 40 (1990). In *Cage*, the trial courts definition of reasonable doubt submitted to the jury read as follows:

> "[A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*."

> *Id.*

The court in *Cage* concluded that this definition of reasonable doubt violated the defendant's Due Process rights as a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that which is constitutionally required. *See Id.* at 41. The court in *Cage* further explained that a reasonable juror could have confused a standard of "moral certainty" with that of evidentiary certainty and found the defendant guilty based on an unconstitutionally low standard of proof. *Id.* Subsequent to the court's holding in *Cage*, the court stated that "the proper inquiry is not whether the instruction could have been applied in an unconstitutional manner but whether there is a reasonable likelihood that the *jury*

*did so apply it.*ö *Estelle v. McGuire*, 502 U.S. 62, 72 and n.4 (1991).

This Court has also recognized that just because a statement by the trial court judge does not later appear in the jury charge reversible error is still appropriate. *See Blue v. State*, 41 S.W.3d 129, 131 (Tex.Crim. App. 2000). In *Blue* this Court stated that

> õtoo much caution cannot be exercised in the effort to avoid impressing the jury with the idea that the court entertains any impressions of the case which he wishes them to know, and putting before them matters which should not enter into or affect their deliberations ... should in all cases be avoided. **To the jury the language and conduct of the trial court have a special and peculiar weight**. The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial. Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved. The delicacy of the situation in which he is placed requires that he be alert in his communications with the jury, not only to avoid impressing them with any view that he has, but to avoid in his manner and speech things that they may so interpret. (citing *Lagrone v. State,* 84 Tex.Crim. 609, 209 S.W. 411, 415 (1919).

Similarly the United States Supreme Court commented that "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." *Starr v. United States,* 153 U.S. 614, 626 (1894)(citing *Hicks v. United States,* 150 U.S. 442, 452 (1893)); *see also Bollenbach v. United States,* 326 U.S. 607, 612 (1946).

## B. <u>The Exception to the Rule</u>

Though this Court in *Paulson* made it clear that defining reasonable doubt to a jury was problematic at best and should be avoided by trial courts, the court did carve out a specific exception for defining or explaining the term: when the State and the defendant agree on the wording within the limits of the Due Process Clause. *See Id.* For example, in *Vosberg v. State* the court concluded that no error was committed in defining reasonable doubt when the State presented the proposed language to defense counsel and no objections were made. *See Vosberg*

6

*v. State*, 80 S.W.3d 320, 321 (Tex.App.-Fort Worth 2002). Similarly and more recently in *Garcia v. State*, the Fourth Court also held that without an objection by the defense to an explanation of reasonable doubt to a jury, such an explanation given by the trial court does not constitute reversible error. *See Garcia v. State*, 246 S.W.3d 121, 142-143 (Tex.App.-San Antonio 2007). Conversely, in *Colbert v. State*, a definition of reasonable doubt was submitted to the jury without the agreement or permission of either the State or the defense. *See Colbert v. State*, 56 S.W.3d 857, 860 (Tex.App-Corpus Christi 2001). In that case, defining reasonable doubt was ruled to be reversible error. *See Id.*

In finding that the court's comments regarding the definition of "beyond a reasonable doubt" did not constitute reversible error, the lower court leaned heavily on its misconstruction of the opinion in *Latson v. State*, 440 S.W.3d 119 (Tex.App.-Houston [14th Dist.] 2013, no pet). In *Latson*, the court found simply the statement during *voir dire* did not constitute <u>fundamental error</u>, therefore excusing trial counsel's failure to object to the instruction. *Id.* at 121. The *Latson* court itself relies on *Fuentes v. State*, which also found only that the defense waived its objection to the judge's comments by failing to object to the judge repeating his definition of the standard of the burden of proof. *Latson*, 440 S.W.3d at ; *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex.Crim.App. 1999). *Feuntes* and *Latson* fail to address whether a definition of beyond a reasonable doubt is permissible when the Defense objects to the obstruction properly. Finally, the Fourth Court claimed that Appellant has not shown that this affected a substantial right; however, the alteration of the burden of proof and definition thereof implicates Due Process rights guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution, which Appellant clearly stated in his brief to that court. *See Cage*, 498 U.S. at 40; U.S. CONST. AMENDS. V, XIV

7

Moreover, unlike in those cases, the trial court expressly stated that he <u>did not believe the definition given in the jury charge was helpful to the jury</u>. 2 R.R.at 41. While this may not be an explicit instruction to ignore the jury charge, it certainly tainted the jury's minds that the charge they would be given would be inadequate, and therefore they should use his definition instead. *See Latson* at 121. Given these circumstances, the rule elicited in *Paulson* should stand: when the defense and state do not agree, no definition of õbeyond a reasonable doubtö should be given, even during the trial court's *vior dire*. 28 S.W.3d at 573. To do otherwise would permit the trial court to side-step *Paulson* whenever it wanted simply by instructing the venire panel as to a definition during *voir dire* but not placing that instruction in the court's charge. In addition, the trial court's instruction differs from that in *Latson* in that the instruction in *Latson* involved whether the state had <u>proved</u> to the juror in each of their hearts and minds that the defendant was guilty. In this case, the trial court stated that if the jury was õ<u>convinced</u>ö in their hearts and minds; the issue here being that a juror could be õconvincedö of a defendant's guilt in his heart and in his mind, even though the state had not proved <u>each element</u> of the case. As such, the trial court's instruction is a moral judgment, not a legal standard, and constitutes reversible error, especially considering defense counsel's objection to the same. *See Cage*, 498 U.S. at 40.

3. **The Fourth Court of Appeals erred when it found that Appellant had not preserved error for the trial court restricting his discussion of the "beyond a reasonable doubt" standard.**

When Rector's counsel attempted to explicitly state to the venire panel that the definition of õbeyond a reasonable doubtö given by the trial court was incorrect, the State objected and the judge instructed him to rephrase. The Fourth Court of Appeals stated that because defense counsel failed to object to the court's ruling on the State's objection, the error was not preserved.

8

## A. Explicit Language Not Required

The Fourth Court complained that Rector's counsel failed to preserve error by failing to object to a ruling on an objection; however, they cited case authority requiring parties to continuously object to a judge sustaining an opposing party's objection. In fact, the only authority they cite for their entire rationale is TEX. R. APP. P. 33.1, the general rule for preserving error. The court failed to even specify which portion of that rule covers the situation where the <u>opposing</u> party objects and the judge sustains the objection.

Rule 33.1(a)(2) states that a trial court may rule "implicitly," and an explicit, formal exchange of exact language between the parties and the judge is not required. In *Krishnan v. Ramirez*, the exchange in question was similar to the one in question here: one side objected to the other's closing statement, to which the trial court simply responded, "You may proceed." 42 S.W.3d 205, 220 n.3 (Tex.App.-Corpus Christi 2001, pet. denied). As the court points out, when it is apparent that an issue has been raised and that the trial court is aware of the objection and response to the objection, the court's statement to "proceed" was implicitly overruling the objection. *Id.* The requirement of an explicit, formal exchange is not necessary where an objection is lodged and the exchange and ruling is implied. *See id.; see also Hardman v. Dault*, 2 S.W.3d 378, 381 (Tex.App.-San Antonio 1999, no pet.).

In this case Mr. Rector's attorney was making an argument to the venire panel when the state objected. 2 R.R. 117. The judge implicitly knew the arguments between the parties: the state objected to defense counsel discussing the judge's definition of reasonable doubt, and the defense believed it had a right to correct the improper definition. *Id.* The judge's statement to rephrase is clearly and implied ruling sustaining the objection. *Id.* The Fourth Court's assertion is that a party must object to a judge ruling on an objection in order to preserve error. If the judge

were to change his ruling, would the first party then have to object to the new ruling? Or does the original objection preserve the error on the second ruling as well? The implication leads to a ridiculous theoretical result, which would seem to be the basis for Rule 33.1(a)(2) permitting implied rulings and exchanges.

## B. The Cumulative Effect

The judge sustaining the state's objection had an additional effect: it emphasized that the judge's definition was correct and any attempts to state otherwise would be shot down. The judge had disclaimed the jury charge as unhelpful; given the jury a new definition to which Rector's counsel objected; overruled counsel's objection; and, finally, sustained objections to that same counsel attempting to mitigate the damage. In this context, it seems clear that the judge wanted the jury to hear and use his definition of "beyond a reasonable doubt," no matter what defense felt. The fact that this definition did not appear in the jury charge is inapposite in this case; the trial court's repeated insistence on this definition combined with the strong influence the judge has on the jurors had the same effect as if it had. *See Blue*, 41 S.W.3d at 131; *Starr,* 153 U.S. at 626.

### Conclusion

Rector sought to have his circumstantial case weighed by the correct standard: to only be found guilty if each and every element is proven beyond a reasonable doubt, not if the jurors believe in their hearts and in their minds that he is guilty. By discounting the jury instruction, inserting a definition of his own over Rector's objections, and denying Rector the opportunity to correct this definition, the trial court denied Rector his Due Process rights guaranteed by the United States Constitution. Because the Court of Appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of

10

Criminal Appeals, review is proper under TEX. R. APP. PROC. 66.3(b).

## **PRAYER**

WHEREFORE, Lloyd Rector prays that the Court grant Rector his Petition for

Discretionary Review and grant him such further relief to which he is entitled by law or equity.

Respectfully Submitted,

_____
CAITLIN HOWELL
State Bar No. 24069954
THE LAW OFFICES OF HOWELL & SABRIN
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205
(210) 857-5452
Fax: (210)587-2460
*Co-counsel for Appellant*

_____
ADAM SABRIN
State Bar No. 24070542
THE LAW OFFICES OF HOWELL & SABRIN
115 E. Travis Street, Suite 1500
San Antonio, Texas 78205
(770) 366-3780
Fax: (210)587-2460
*Co-counsel for Appellant*

**CERTIFICATE OF SERVICE**

Under Texas Rules of Appellate Procedure 9.5, I hereby certify that this 15th day of May, 2015, a copy of the above Petition for Discretionary Review has been delivered via facsimile to Bexar County District Attorney's Office, Assigned Assistant District Attorney, Appellate Division, at (210) 335-2436.

_____
Adam Sabrin
*Co-counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rules of Appellate Procedure rule 9.4, I certify that the above Petition for Discretionary Review contains 3,276 words, which is in compliance with the length limit for briefs under the rule 9.4.

_____
Adam Sabrin
*Co-counsel for Appellant*

**APPENDIX**



## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-14-00115-CR

Lloyd **RECTOR**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CR-4029B
Honorable George H. Godwin, Judge Presiding[1]

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  April 15, 2015

AFFIRMED

Lloyd Rector appeals his conviction for aggravated robbery with a deadly weapon, arguing

the trial court abused its discretion by defining "beyond a reasonable doubt" during voir dire and

by denying him access to evidence with potential exculpatory and impeachment value.  We

overrule Rector's issues on appeal and affirm the trial court's judgment.

---

[1] Sitting by assignment.

**BACKGROUND**

At approximately 5:00 a.m. on February 16, 2014, Jennifer Delgado and her friend Alex were asleep on her living room couch when they heard loud banging on the front door and two men entered the home. The darker-skinned man pointed a gun at them and instructed them to lie down on the floor and be quiet. Both men were wearing hoodies and had pulled them down to obscure their faces; the darker-skinned man was also wearing a red bandana across his mouth. When Jennifer screamed, the lighter-skinned man grabbed the gun from the first man and fired a shot in her direction, instructing her to be quiet. The darker-skinned man demanded, "Give me everything you've got" and started walking around the house collecting items in a plastic garbage bag. Meanwhile, the lighter-skinned man took Jennifer into the kitchen at gunpoint and instructed her to undress and perform a sexual act, which Jennifer refused to do. During this time the man's hoodie fell away from his face and Jennifer recognized him as Oscar Aguilera, with whom she had attended middle school. At that point, the darker-skinned man told Aguilera they "didn't come for that," and the men then left with the trash bag, threatening to come back and kill Jennifer if she told anyone about the robbery. Two other friends who had been sleeping in a back bedroom escaped out of a window when they heard the commotion, ran down the street to a neighbor's house, and called 911.

At approximately 4:45 a.m. that same day, San Antonio Police Officer Deidra Dawson was down the street from Jennifer's house investigating a "suspicious person" call about a young man in a black t-shirt running down the street ringing doorbells. Dawson saw Rector running down the sidewalk carrying a plastic trash bag and looking "very stressed out." Dawson stopped Rector and asked for his identification, talking to him for about three to four minutes. Rector stated that he was on his way home from a friend's house and that the bag was full of clothes. Because Rector had no outstanding warrants and she did not observe him committing a crime, Dawson released

Rector without looking inside the bag; she stated she had no probable cause to search the bag. About thirty seconds later, Dawson received a call for the robbery at Jennifer's house about one block away. Dawson went to the robbery scene and interviewed the witnesses. She broadcast a description of the suspects, based on her earlier encounter with Rector, but no one was apprehended that night. Dawson listed Rector as a suspect in her report.

Several days later, Jennifer decided to make a statement and identified Aguilera as one of the men who robbed her. Aguilera was arrested but denied involvement in the robbery and denied knowing Rector. About two weeks later, Rector was arrested on outstanding traffic citations and was questioned about the robbery. Rector admitted going to Jennifer's house to buy drugs, but stated he left before the robbery occurred. Rector also admitted knowing Aguilera and stated that Aguilera had told him about the robbery.

Rector was indicted for aggravated robbery involving the use or exhibition of a deadly weapon, to wit: a firearm. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). A jury found Rector guilty as charged in the indictment, and the trial court sentenced him to twenty years' imprisonment. Rector now appeals.

## ANALYSIS

### *Definition of "Beyond a Reasonable Doubt" – Voir Dire*

In his first and second issues, Rector asserts the trial court abused its discretion by providing the jury panel with a definition of "beyond a reasonable doubt" during voir dire and by sustaining the State's objection to defense counsel's attempt to "correct" the definition. The State replies that the trial court's definition did not constitute error and that Rector failed to preserve his second complaint.

In discussing the State's burden to prove every element of the charged offense beyond a reasonable doubt during his general remarks to the venire panel, the trial court stated,

Let's talk about beyond a reasonable doubt. I'm going to offer up a definition in a minute. I stole it from another prosecutor 30 years ago. And the reason I did that is because he had a way to define it that I couldn't say it in [sic] better than that. You're going to get a definition in the Court's Charge. The definition goes something along the lines of, 'It's not beyond all doubt but beyond a reasonable doubt.' I'm not sure how helpful that is.

My definition that I borrowed is if you go back there in the jury room and you think the Defendant is probably guilty, that's not proof beyond a reasonable doubt. If you go back there in the jury room and *you're convinced in your heart and in your mind*, that is proof beyond a reasonable doubt.

All right. That's the burden. It's not beyond all doubt. It's not beyond a shadow of a doubt.

(emphasis added).

Defense counsel objected that the court's comments were not a proper statement of the law. The court overruled the objection and continued explaining the meaning of "beyond a reasonable doubt" by comparing the different burdens of proof, from "preponderance of the evidence" to "clear and convincing" to "beyond a reasonable doubt," which the court stressed was the highest burden. The court finished by repeating that beyond a reasonable doubt is "not proof beyond all doubt. It is proof that convinces you beyond a reasonable doubt, which says it for itself."

(1) The Trial Court's Definition of "Beyond a Reasonable Doubt"

In his first issue on appeal, Rector argues that the italicized portion of the definition was error because it lowered the State's burden of proof by suggesting the jury could convict if they were merely "convinced in [their] heart and [their] mind" rather than convinced by legally sufficient evidence. All of the cases relied on by Rector involve definitions of "reasonable doubt" that were included in jury instructions contained in the court's charge. The function of the court's charge is very different from that of the court's general voir dire, as the jury charge instructs the jury on the law applicable to the case which the jury is obligated to follow. *See Dinkins v. State*,

894 S.W.2d 330, 338 (Tex. Crim. App. 1995). Rector cites no case involving allegedly improper comments by the trial court or counsel during voir dire, nor any case holding that comments on the meaning of reasonable doubt during voir dire constitute error. The State also fails to cite any case addressing allegedly improper comments made by the court or counsel during voir dire, and relies solely on jury charge cases.

Rector's complaint is that the trial court defined "reasonable doubt" as merely what is in each juror's "heart and mind," thereby reducing the State's burden of proof and constituting harmful error. In evaluating a complaint about the trial court's remarks during voir dire, we must examine the remark within the entire context of the record. *Infante v. State*, 397 S.W.3d 731, 738 (Tex. App.—San Antonio 2013, no pet.). Here, as noted above, the trial court suggested a definition of "beyond a reasonable doubt" as being convinced in one's "heart and mind," but did so within the context of its discussion of the various levels of proof in civil and criminal cases. The court repeatedly stressed that beyond a reasonable doubt is "the highest burden" in our judicial system. Finally, the court explained that it is "not proof beyond all doubt," but "[i]t is proof that convinces you beyond a reasonable doubt, which says it for itself."

We disagree that the court's comments about the meaning of "beyond a reasonable doubt," when read in context, were error. In Texas, jurors must decide what "proof beyond a reasonable doubt" means to them. *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003). While it is no longer required that trial courts define "reasonable doubt" for the jury, it is also not prohibited. *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (overruling that portion of *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), which required trial courts to include a particular instruction in the jury charge defining "beyond a reasonable doubt"). While expressing its opinion that the better practice is to give no definition of "reasonable doubt" to the jury, the *Paulson* court acknowledged that, "the Constitution neither prohibits trial courts from defining

reasonable doubt nor requires them to do so as a matter of course." *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)). Here, the trial court's voir dire comments about the meaning of "reasonable doubt" did not convey the court's opinion about whether Rector was guilty, did not apply the burden of proof to the facts of the case, and did not shift or lower the State's burden of proof. *See Latson v. State*, 440 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that court's statement during voir dire that beyond a reasonable doubt is proof that "proves to you individually kind of in your heart, in your mind that the Defendant is guilty" did not taint the presumption of innocence); *see also Wilkerson v. State*, 347 S.W.3d 720, 725-26 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd) (rejecting defendant's argument that court's explanation to venire panel that proof beyond a reasonable doubt is "what's in your mind to be a reasonable doubt" diminished the State's burden of proof). Most importantly, the trial court's remarks during voir dire did not direct the jurors to follow their "hearts and minds" and ignore the court's written instructions in the jury charge. *See Latson*, 440 S.W.3d at 121. The court's charge did not contain the challenged language about "hearts and minds." The charge simply instructed the jury that the State had the burden to prove every element of the offense beyond a reasonable doubt and that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." We therefore conclude the court's voir dire comments about the meaning of "beyond a reasonable doubt" were not error, and even if they were error, Rector has not shown that they affected a substantial right. *See* TEX. R. APP. P. 44.2(b).

(2) <u>Restriction on Defense Counsel's Discussion of "Beyond a Reasonable Doubt"</u>

Rector also argues that the trial court deprived him of the opportunity to "correct" the court's definition of "beyond a reasonable doubt" during his voir dire of the jury panel. However, the record reflects that Rector's counsel was permitted to discuss and contrast the various burdens

of proof, to give examples of their application, and to stress that "beyond a reasonable doubt" is the highest burden. Defense counsel further explained that a definition of "beyond a reasonable doubt" is no longer given because "the Supreme Court has decided that it's up to each person individually. I can discuss it with you. I can give you some ideas, but I can't actually come out and give you like a litmus test . . . ." Finally, counsel specifically addressed the language used by the trial court by telling the venire, "So, that's why when somebody says you got to be convinced in your heart, in your mind, you see, that's not beyond a reasonable doubt . . . it's got to go beyond that. Just because you feel it powerful, just because it's something that might inform a lot of your life, doesn't make it true." At that point, the State objected that counsel was misstating the law on reasonable doubt. The court instructed defense counsel to rephrase and he did so by stating, "You got to look at the evidence and make sure it's all there on each element." Defense counsel then moved on to another subject. Because defense counsel did not object to having to rephrase his statements, the error, if any, was not preserved. TEX. R. APP. P. 33.1.

### *Access to Exculpatory and Impeachment Evidence*

In his third and fourth issues, Rector complains that the trial court abused its discretion by improperly denying him access to: (1) potentially exculpatory evidence consisting of the 911 call and dispatch and the communication logs from the mobile data terminal ("MDT") in Officer Dawson's vehicle at the time she detained Rector; and (2) potential impeachment evidence consisting of the internal affairs records of the investigating police officers, and the police interview with Aguilera in which he denies any involvement with Rector. The State replies that Rector has failed to meet his burden to show a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963).

In April 2013, Rector served a subpoena duces tecum on the San Antonio Police Department (SAPD) seeking "[a]ny communications involving officers or investigators or

audio/video recordings in this case; including but not limited to Mobile Data Terminal logs, conversations between Officers and Dispatchers, 911 telephone calls." The subpoena also sought the disciplinary history, including internal affairs reports, for the officers involved in the case and "witness statements" discoverable by the defense.[2] The City of San Antonio, on behalf of the SAPD, filed a motion to quash and for an *in camera* inspection. The court held a pre-trial hearing on the matter in October 2013. The trial judge stated on the record that he had reviewed the confidential internal affairs packets produced by the SAPD for the officers involved in Rector's case. The court stated it found no exculpatory evidence or evidence relevant to impeachment in the internal affairs records; it sealed the records and made them part of the record. When defense counsel asked about the 911 call/dispatch and the MDT communication logs, the court stated they were not included in the items produced by the SAPD and suggested that Rector urge a subsequent motion seeking their production; counsel stated he would do so. No further motion or subpoena pertaining to the 911 call/dispatch and MDT logs was filed by Rector.

During pretrial proceedings before jury selection commenced on December 4, 2013, Rector's counsel stated,

> So, we've asked for MDT logs and also 911 dispatch recordings so that we can establish that timeline. We believe that's *Brady* material because it is reasonably likely to be exculpatory . . . The MDT logs from the police vehicle during my client's first stop when he was in custody and also any recordings or notations from dispatch at that same time because the officers would have called them and run his license . . . So, that would establish the precise timing of when he was stopped and if the prosecution can establish a precise time that the offense occurred, it might present him with an alibi.

In response to the court's inquiry as to whether any such communication logs still existed, the prosecutor replied that an incident detail report was in the State's open file, but "[o]ther than that,

---

[2] Rector also filed a *Brady* motion and a general discovery motion; however, he did not obtain a ruling on those motions. *See Johnson v. State*, 172 S.W.3d 6, 18 (Tex. App.—Austin 2005, pet. ref'd).

no, Your Honor." The prosecutor further stated that the 911 tapes "are destroyed within a certain amount of time." Defense counsel argued that the MDT and dispatch logs must still exist, but the court ultimately denied Rector's request for their production.

During her trial testimony, Officer Dawson stated that she stopped Rector at 4:45 a.m., detained him for approximately three to four minutes, and then released him; the robbery call came in thirty seconds later. When defense counsel stated that Dawson's report indicates she released Rector at 4:50 a.m., Dawson agreed and explained the officers use approximations for time. Finally, when asked whether she "call[ed] in to dispatch or enter[ed] anything in [her] computer when [she] first come [sic] into contact with the subject," Dawson responded that she did. Dawson stated that she would normally do the same when releasing a subject, but there was not time to do that because the robbery call came in so quickly. Rector did not ask whether Dawson knew if those logs still existed or renew his request for their production.

To prevail on his claim of a due process violation under *Brady*, Rector has the burden to prove that (i) the State failed to disclose evidence in its possession, (ii) the evidence is favorable to the defense, and (iii) the evidence is material in that there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011); *see Brady*, 373 U.S. at 87. "Favorable evidence includes exculpatory evidence as well as impeachment evidence." *Pena*, 353 S.W.3d at 811. "Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence. *Id.* at 811-12. Evidence is "material" to guilt or punishment if "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Id.* at 812. However, "[t]he mere possibility that an item

of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.*

Rector has failed to meet each of the three elements necessary to establish a *Brady* violation. With respect to the 911 call/dispatch and the MDT logs, Rector has failed to prove they existed at the time the subpoena was served. *See id.* at 810 ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.") (quoting *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)). As noted, the prosecutor represented that the 911 tapes are routinely destroyed. Rector failed to inquire of Dawson and the other testifying officer whether the 911 dispatch and MDT logs still existed and how long such communication logs are maintained by the SAPD.

Rector has similarly failed to prove that any of the evidence sought was "favorable" to his defense or "material" to his guilt/innocence or punishment. As Officer Dawson testified, she initially responded to a suspicious person call at 4:45 a.m. based on a complaint that a young man was running down the street ringing doorbells. Other trial evidence established this person was one of Jennifer's friends who escaped through a window during the robbery. As the State points out, at the time Dawson made contact with Rector one block away from Jennifer's house, she was already responding to the suspicious person call prompted by the friends' escape during the robbery and efforts to call 911. Dawson testified the dispatch for the robbery came in thirty seconds after she released Rector at approximately 4:50 a.m. Rector has failed to show that the police dispatch and communication logs, even if they existed, would have provided him with an alibi based on the timeline of events, or been otherwise favorable to his defense, or were material in that there is a reasonable probability the trial's outcome would have been different if the evidence was produced. Finally, we find no abuse of discretion in the trial court's ruling that the

SAPD internal affairs records have no exculpatory or impeachment value with respect to Rector's case. *See McBride v. State*, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992).

Last, Rector complains that, "according to now-available materials, the State is in possession of a recorded interview with Oscar Aguilera wherein he denies any knowledge of or involvement with Lloyd Rector" and asserts its disclosure would have led to a different outcome. Rector does not explain the nature of the "now-available materials" and there is nothing in the record before us to support his assertion that the State has, or had at the time of trial, the recorded interview with Aguilera. In addition, evenly broadly construing Rector's subpoena as seeking any recorded statement by Aguilera, he never made this matter known to the trial court. *See* Tex. R. App. P. 33.1. Further, one of the investigating officers testified to substantially the same evidence by stating that when questioned, Aguilera denied knowing Rector. Rector has not shown any error or harm with respect to a statement by Aguilera.

## CONCLUSION

Based on the foregoing reasons, we overrule Rector's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

Do Not Publish