**Affirmed as Modified and Opinion Filed July 26, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-00524-CR
_____

**JOSE ALBERTO CASTILLO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1318492-T**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Whitehill
Opinion by Justice Whitehill

A jury convicted appellant of continuous sexual abuse of a child younger than fourteen years of age and the trial court assessed punishment at thirty years imprisonment.

In five issues, appellant argues that: (i) the evidence is legally insufficient to support his conviction; (ii) the trial court erroneously excluded evidence that his son admitted to sexually abusing the complainant; (iii) the trial court erred by not allowing defense counsel to impeach his own witness with another witness's statement; and (iv) the trial court egregiously erred by giving a partial definition of beyond a reasonable doubt. In a cross-point, the State requests that we modify the judgment to reflect appellant's conviction for continuous sexual abuse of a child. We modify the judgment and affirm as modified.

# I. Background

The first trial of this case resulted in a mistrial. The following evidence was adduced when the case was retried:

Appellant began sleeping with his daughter BC, the complainant, and her sister after his divorce from the children's mother, Mariana Hernandez. BC was seven or eight years old when appellant started abusing her. BC said that appellant put his finger in her vagina about twice and penetrated her vagina with his penis more than five times. Initially, BC did not tell anyone about the abuse because appellant told her the police would come and get him if she said anything.

Appellant then married Aurora Perez, and BC thought he had changed. But Perez got a nanny job and would stay away from home for days at a time. On one occasion, when BC was sleeping in her father's room, he took out his penis and asked her if it fit yet. He put it inside her vagina "a little bit" and then went to the restroom. When he returned he said he was "really sorry" and he "wasn't going to do it again, but he kept doing it." There were two more assaults.

BC eventually told her mother (Hernandez) about the abuse, but Hernandez was not sure whether to believe her. Appellant had just won temporary custody of the children, and Hernandez thought there was a chance BC had lied so she could move back in with her.

Hernandez wanted to be absolutely sure that the abuse occurred before reporting it, because it otherwise appeared as if the children were doing well with their father. So Hernandez confronted appellant. Appellant responded by hitting BC and asking her why she was telling her mother lies. BC decided not to say anything more about it. After appellant denied the abuse, Hernandez took no action. Hernandez also denied telling BC to make the accusations. Although Hernandez did not believe BC initially, she said she changed her mind and believed everything BC said.

Later, BC let the abuse slip to a cousin around her age. The cousin told her father, appellant's brother, who in turn told appellant. Appellant beat BC "for telling."

Appellant dropped Perez and BC off with his parents in Mexico. At some point, BC was told that her grandmother would harm herself if appellant went to prison. During this trip, BC told Perez that appellant had not really touched her and that Hernandez had given her the idea to accuse appellant of sexual abuse so that the children could resume living with her.

When they returned from Mexico, Perez called a family meeting at McDonald's, at which she confronted Hernandez in front of the children and appellant. Hernandez denied telling BC to accuse appellant of sexual abuse. BC wanted to protect her father, so she told her mother that she had lied about the abuse before.

BC eventually reported the abuse to a school counselor, Laura McAda. McAda said that she had previously been informed that BC was having behavior problems at home. McAda recalled that Perez came to the school and said she was worried that BC was going to hurt herself because her cell phone had been taken away. The assistant principal came into the meeting and BC was brought to the office. Then, BC made her outcry. She was thirteen years old at the time, and it had been two weeks since appellant had last abused her. When BC made the accusation against her father, Perez did not believe the accusation was true and said that BC had made these accusations before.

BC explained that she kept quiet after the second beating. But when appellant requested that her little sister sleep with him, BC decided she needed to tell someone so her sister would not suffer the same abuse. BC admitted that she told her stepmother that the abuse had been a lie and her mother was making her say it. BC also admitted that she hated her stepmother and was angry with her father.

Kelly Prewitt, the assistant principal, testified that there was friction between BC's stepmother and her biological mother. When they brought BC to the office she told them she had an argument with her father and she had said something to him about the abuse. BC then told the

school officials that her father had sexually abused her. She said he had touched her with his hands down her panties and entered her with his hand. She said he put his penis between her legs from behind and one time he tried to enter her, but could not.

Sandra Onyianya, a nurse practitioner at Children's Medical Center examined BC because BC told her foster mother that appellant had penetrated her vagina with his penis. The exam was normal and there was no trauma to her genitalia, but Onyianya was not expecting to find any since any injury would have already healed.

Detective Eric Murray described the police investigation. He interviewed appellant, who denied the offense. He also confirmed that there was no physical evidence.

Melissa Reilly, a social worker at Parkland Hospital, testified about her counseling sessions with BC. She explained that delayed outcry refers to a child who does not immediately report that they are being abused, and that this is common. BC's delayed outcry resulted from her concern about losing her family. During the sessions, BC was also confused about why she wasn't believed and why her father wasn't telling the truth.

The Dallas Children's Advocacy Center interviewed all of appellant's children other than BC's brother JC. During her interview, BC described the abuse with sequence, narrative, and sensory detail.

Marquesa Castillo, one of BC's cousins, visited BC's home on the weekends. She said that BC and her sister slept in appellant's bedroom. Marquesa believed that BC was an honest person.

Another cousin, Abigail Castillo, said she and BC were close and talked about a lot of things. She said BC was shaken by the separation of her parents and wanted her parents to get back together. She also said she never saw anything strange at BC's house or see appellant do anything that concerned her, and BC never told her that something had happened to her or that her

father had abused her. According to Abigail, BC and her sister did not sleep in appellant's bedroom.

JC, BC's brother, testified that his sisters only slept in his father's room when they were really sick. He also said he never saw his father do anything towards BC that concerned him.[1]

Denise Flores and Yosira Muro, appellant's stepdaughters, also testified that BC sleeps in a separate room and said they never saw appellant do anything towards BC that caused them any concern. In Flores's opinion, BC was not "truthful a lot of times."

At the conclusion of trial, the jury found appellant guilty, and the court assessed punishment at thirty years imprisonment.

## II. ANALYSIS

### A. First Issue: Is the evidence sufficient to support the conviction?

Appellant's first issue argues that the evidence is insufficient because BC's testimony was the only evidence supporting the State's allegation and that testimony was inconsistent and lacked credibility.

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the fact finder is

---

[1] JC conferred with the public defender's office midway through his testimony and invoked his Fifth Amendment privilege against self-incrimination.

the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

To prove continuous sexual abuse of a child, the State is required to prove: (i) a person 17 years of age or older; (ii) commits two or more acts of sexual abuse; (iii) against a child younger than 14 years of age; (iv) during a period that is 30 or more days in duration. *See* TEX. PENAL CODE §21.02 (b). The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). The jury is the sole judge of the witnesses' credibility. *Id.*

Here, BC testified about several instances of penile and digital penetration during two different time periods. The first began after her parents' divorce when she was seven or eight. The second period of abuse began when Perez began working as a live-in nanny and was ongoing when BC made her outcry at age thirteen.

Appellant argues that BC was not credible, relying on her admissions that (i) she lied about the abuse so she could go live with her mother; and (ii) she hated her stepmother and was upset with her father. Appellant further relies on the testimony that BC was not a truthful person, her

mother's initial doubts about whether BC's allegations were true, and BC's behavioral issues at home.

BC's testimony, however, was sufficient. *See Garner*, 523 S.W.3d at 271. And the existence of contrary evidence is not enough to sustain a sufficiency of the evidence challenge. *See Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. denied). Moreover, in conducting a sufficiency review, "our role is not to become a thirteenth juror." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Here, the jury was charged with weighing the evidence and assessing the witnesses' credibility, and we do not reweigh the evidence. *See Cardenas v. State*, 30 S.W.3d 384, 389–390 (Tex. Crim. App. 2000). Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant was guilty of continuous sexual abuse of BC, a child under fourteen years of age. We thus resolve appellant's first issue against him.

**B. Second Issue: Did the trial court err by excluding evidence of sexual abuse by another person?**

Appellant argues that the trial court erroneously excluded a statement BC's brother JC made to Caitlan Cunningham, a Child Protective Services Investigator, about sexually abusing BC. According to appellant, this abuse provided an alternative explanation about how BC was able to provide sequence, narrative, and sensory details during her forensic interview. In support of his argument, appellant argues that *Kesterson v. State*, 997 S.W.2d 290, 292 (Tex. App.—Dallas 1999, no pet.) "addresses a similar question."[2] The State responds that the trial court's ruling was not erroneous because: (i) appellant failed to establish the relevance of the statement he was trying to admit; (ii) TEX. R. EVID. 412 requires an in camera hearing before prior sexual evidence can be

_____

[2] Appellant's reliance on *Kesterson* is misplaced.

offered and appellant did not request a hearing; and (iii) the statement was inadmissible hearsay because statements against penal interest must be corroborated.

We review a trial court's decision to exclude evidence for abuse of discretion. *Wetherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court's ruling should be upheld if it is correct under any theory applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

When appellant tried to admit the evidence at issue, the State objected based on relevance and hearsay. The trial court then noted that the statement would be an exception to hearsay if it's a statement against interest and asked for the State's response. The State responded and the trial court replied:

> PROSECUTOR: Can you start over? I mean, the point is is [sic.] that somebody else perpetrated against [BC] is not relevant to this inquiry, right?

> THE COURT: And it's – the Court agrees. The Court will not allow – the Court will not allow the proposed witness, [JC], to testify that he molested this complainant in this case.

Appellant's counsel then proposed to put on Cunningham "who had those admissions made to her." Appellant represented that Cunningham would testify that JC admitted he "sexually molested" BC.

The court asked Cunningham if JC told her that he had "sexually molested the complainant in this case." Cunningham said, "I don't recall exactly what was said, but I believe so, yes."

Appellant asked follow up questions about "sexual abuse" and verified the contents of Cunningham's records. Then this exchange with Cunningham occurred:

> Q [by appellant's counsel]: And doesn't it [Ms. Cunningham's record] further state that the allegation of abuse on [BC] by [JC] is reason to believe that [BC] made an outcry of sexual abuse and [JC] admitted to that abuse?

> A: Yes.

The court then reaffirmed its decision to exclude the evidence.

Although at trial in this case appellant offered no explanation for the evidence's purported relevance, on appeal he argues that the evidence was relevant to refute testimony about BC's ability to tell a chronological story with sensory details in her forensic interview. But we review the trial court's ruling "in light of what was before the trial court at the time the ruling was made." *Weatherred*, 15 S.W.3d at 542.

That is, the record must demonstrate that the evidence was relevant when the trial court ruled:

> As for appellant's citation to evidence elicited during the motion for new trial hearing, that evidence does not impact the validity of the trial court's ruling at trial. In determining the validity of a trial court's decision to exclude evidence, we examine the record as it appeared at the time of the trial court's ruling. *Currie v. State,* 692 S.W.2d 95, 97–98 (Tex. Crim. App. 1985). Because the record at the time of the ruling did not show the relevance of the anticipated lawsuit, the trial court did not err in excluding the evidence.

*Hoyos v. State*, 682 S.W.2d 419, 422 (Tex. Crim. App. 1998).

Applying the principles from *Hoyos* and *Weatherred* here supports the conclusion that the trial court did not err by excluding evidence of JC's purported abuse of BC, because the record at that time did not support that evidence's relevance in that case. Specifically, when Cunningham's statement was offered, the forensic interviewer had not testified about BC's ability to provide sensory details. Rather, that evidence was not admitted until three witnesses later. And appellant did not re-offer the evidence after the forensic interviewer testified. Although BC testified before the statement was offered, she only said that the first instance of abuse felt "weird."

Moreover, to show the relevance of a child victim's prior sexual assault as an alternate source of knowledge, the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question. *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd).

When appellant's counsel made his offer of proof, he asked Cunningham two questions about her report. First, he asked ". . . doesn't that state that the allegation of sexual abuse by [BC] by an unknown person is unable to determine?"[3] Then he asked, "And doesn't it further state that the allegation of abuse on [BC] by [JC] is reason to believe that [BC] made an outcry of sexual abuse and admitted to that abuse?" Cunningham replied, "Yes."

These general references to "sexual abuse" and "sexual molestation" do not demonstrate that the acts so closely resembled the specific acts present in this case that they could explain BC's knowledge.[4] In addition, Cunningham's' statement that there was "reason to believe" that JC's abuse of BC occurred does not establish that the acts clearly occurred. Thus, based on the evidence and arguments before the court at the time the evidence was excluded, the trial court could reasonably have concluded that appellant had not established the evidence's relevance. We therefore conclude that the trial court did not abuse its discretion by excluding the evidence, and resolve appellant's second issue against him.[5]

## C.     Third Issue: Did the trial court err by excluding evidence of a witness's prior inconsistent statement?

Appellant's counsel sponsored the testimony of Hernandez's friend, Carla Aguerra. At some point about a year before the trial, Aguerra took Hernandez to church. When appellant's counsel asked whether Hernandez had said anything about the case, the State lodged a hearsay objection. The jury was removed and Aguerra was allowed to answer. She said Hernandez was "worried because all this was going on ahead and that she didn't know what to do. That she told

---

[3]In addition to abuse by appellant and JC, BC also told CPS she had been abused by unknown adult males visiting her home.

[4] Although there are additional details in Cunningham's thirty-six page report that was admitted for record purposes only, appellant did not bring these details to the trial court's attention or ask Cunningham about them when she testified.

[5] We therefore need not consider the additional grounds raised by the State to support the evidence's admission. *See* TEX. R. APP. P. 47.1.

me that her husband did not do this to his daughter and that she knows who did it." When the trial judge said that he would not allow the testimony, the following exchange occurred:

Counsel: This is an act -- serious charge of sexual assault against my client.

Court: I think I understand that.

Counsel: On which one of the key witnesses for the State is the mom who has come down and said this young lady told me [her] dad was touching her and then she purposely while the case is going on, or unintentionally, I don't know, but voluntarily makes a statement to this lady which is clearly completely contrary to what she came down and testified.

Court: Well, up until you introduced the mother's testimony, there was no testimony of her.

Counsel: I understand.

Court: So the preface that this case is based on her as a key witness is a false predicate.

Counsel: Well, we move for admittance of the testimony, and if you overrule us I understand Judge.

Court: It's overruled.

Appellant now argues the trial court erred in excluding the testimony because it was admissible to impeach Hernandez's statement that she believed appellant had abused BC. Assuming arguendo that the argument was properly preserved and the trial court erred, the record does not demonstrate that appellant was harmed.

On this record, there is nothing that demonstrates that the impeachment value of Hernandez's statement to Aguerra provided any marginal benefit to the defense over the evidence already before the jury. Hernandez's testimony was that she was initially hesitant to believe BC, but that changed and she believed everything BC said. BC testified that when she first told Hernandez, Hernandez had accused her of lying. Therefore, Hernandez's statement to Aguerra during the time when Hernandez did not believe BC added nothing new to the case. We resolve appellant's third issue against him.

**D. Fourth Issue: Was the reasonable doubt instruction given in error?**

Appellant's fourth issue argues that the trial court egregiously erred by giving a partial definition of reasonable doubt in the jury instructions. We reject this issue.

We review alleged jury charge error in two steps. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists in the charge. *Id.* Second, if charge error exists, we review the record to determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). "Where, as here, the defendant did not raise a timely objection to the jury instructions, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

The instruction in this case read: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt."

In *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000), the court of criminal appeals considered the six paragraph reasonable doubt instruction mandated by *Geesa v. State*, and specifically criticized paragraphs four and five of that instruction.[6] The court held that the better practice is to give the jury no definition of reasonable doubt, but if both the prosecution and the defense agree to give the instruction, the trial court does not err by giving it. *Id.*

Appellant points to sister court decisions concluding that *Paulson* means that giving an instruction such as the one at issue here constitutes error. *See e.g., Rodriguez v. State*, 96 S.W.3d 398, 403 (Tex. App.—Austin 2002, pet. ref'd) (any instruction on reasonable doubt is equivalent

---

[6] *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), *overruled in part by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

to playing with fire); *Phillips v. State*, 72 S.W.3d 719, 720 (Tex. App.—Waco 2002, no pet.) (error to give instruction). This reliance is misplaced.

This court has previously held that the "all possible doubt" instruction does not define reasonable doubt in violation of *Paulson*, and thus its inclusion in the charge is not error. *O'Canas v. State*, 140 S.W.3d 695, 701–02 (Tex. App.—Dallas 2003, pet. ref'd). We have since rejected numerous requests that we reconsider *O'Canas*, and we decline to do so today. *See Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.—Dallas 2005, no pet.); *Chapin v. State*, No. 05-15-01009-CR, 2016 WL 4421570, at *6 (Tex. App.—Dallas Aug. 19, 2016, no pet.) (mem. op. not designated for publication); *McDaniel v. State*, No. 05-15-01086-CR, 2016 WL 7473902, at *7 (Tex. App.—Dallas Dec. 29, 2016) (mem. op. not designated for publication).

Moreover, in *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004), the court of criminal appeals clarified that *Paulson* overruled only the part of *Geesa* that required courts to instruct juries on the definition of reasonable doubt (paragraphs four and five of the *Geesa* charge). The *Woods* instruction, however, was taken from paragraph three of the *Geesa* charge, and thus was not among the paragraphs *Paulson* disapproved. *Id.* Accordingly, the court held that the trial court did not abuse its discretion by giving the instruction. *Id.*

Likewise, the complained of instruction here is identical to the instruction in *Woods*, and was not among those parts of the *Geesa* charge *Paulson* disapproved. We therefore resolve appellant's fourth issue against him.

**E.** **State's Cross Point: Should we modify the judgment to identify the correct statute that appellant was convicted of violating?**

The judgment states that appellant was convicted for "SEX ABUSE CONTINUOUS CHILD 14," but cites to penal code section 22.021 (aggravated sexual assault). The State's cross-point asks that we modify the judgment to reflect that appellant was convicted of continuous sexual abuse of a child under TEX. PENAL CODE § 21.02.

–13–

We have the authority to correct the trial court's judgment to make the record "speak the truth" when we have the necessary data and information to do so. *See* TEX. R. APP. P. 43.2; *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The record here includes such information.

We therefore sustain the State's cross-point and modify the judgment to reflect that appellant was convicted under TEX. PENAL CODE § 21.02. As modified, the trial court's judgment is affirmed.

### III. CONCLUSION

We resolve all of appellant's issue against him and sustain the State's cross-point and modify the judgment to reflect that appellant was convicted under TEX. PENAL CODE § 21.02. As modified, the trial court's judgment is affirmed.


/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
170524F.U05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSE ALBERTO CASTILLO, Appellant

No. 05-17-00524-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1318492-T.
Opinion delivered by Justice Whitehill.
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that appellant was convicted under TEX. PENAL CODE § 21.02 rather than TEX. PENAL CODE § 22.021.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered July 26, 2018.