# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00278-CR
## NO. 03-19-00279-CR

**Jimmy Urista Navarro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 51ST DISTRICT COURT OF TOM GREEN COUNTY
### NOS. A-18-0119-SB & A-18-02009-SA,
### THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Jimmy Urista Navarro guilty of sexual assault of a child and prohibited sexual conduct for sexual abuse perpetrated against his biological daughters when they were teenagers. *See* Tex. Penal Code §§ 22.011(a)(2)(A), 25.02(a)(1). The jury assessed his punishment at confinement for twenty years in the Texas Department of Criminal Justice for each offense, *see id.* § 12.33, and the trial court sentenced appellant consistent with the verdicts, ordering the sentences to be served concurrently, *see id.* § 3.03.

In these appeals, appellant complains about error in the jury charges and asserts that his trial counsel rendered ineffective assistance. Finding no reversible error, we affirm the trial court's judgments of conviction for sexual assault of a child and prohibited sexual conduct. On review of the record, we have found non-reversible error in the trial court's written judgment

of conviction for prohibited sexual conduct. We will modify that judgment to correct the error and, as modified, affirm it.

## BACKGROUND

In cause number A-18-0119-SB (appeal number 03-19-00278-CR), appellant was charged with sexual assault of a child for having sexual intercourse with his older daughter when she was sixteen. *See* Tex. Penal Code § 22.011(a)(2)(A). In cause number A-18-0200-SA (appeal number 03-18-00279-CR), appellant was charged with prohibited sexual conduct for later engaging in deviate sexual intercourse with his younger daughter when she was seventeen. *See id.* § 25.02(a)(1).

The cases were consolidated for trial. During the State's case in chief in the guilt-innocence phase, appellant's older daughter (OD) and his younger daughter (YD) both testified.[1] In addition, two police detectives testified about their investigation of this case, and a forensic interviewer from the children's advocacy center testified about her interviews of YD and her little brother, who was eleven years old when interviewed. Appellant testified on his own behalf, denying that he engaged in any sexual activity with his daughters, and a neighbor of appellant's parents testified that, based on her observations of and interactions with the family, appellant was a "strict father," but she felt that his relationship with his children was "good." During the State's rebuttal, a school records custodian testified, and YD's school attendance records were admitted. In addition, appellant's son testified about appellant's treatment of his children.

---

[1] All of the family members, including both of appellant's daughters, have the same initials. Thus, instead of using initials, we refer to appellant's older daughter as "OD" and his younger daughter as "YD."

The jury heard evidence that appellant, his two daughters, and his son lived together in an apartment in San Angelo. Testimony from all three of appellant's children reflected that appellant was physically abusive toward his children, particularly his daughters. As appellant's fourteen-year-old son explained, appellant would hit and slap them "a lot," striking them "across the face, body, anything." While the abuse happened to him, "it was more against [his] sisters." They would get hit when they got in trouble, when appellant got mad, or "if [appellant] was having a bad day." Testimony also showed that appellant would keep the girls home from school as punishment.[2] On several occasions, appellant put YD in his closet for multiple days ("maybe a week," according to her brother), making her stay in there day and night. He pushed his mattress against the door and only let her out to go to the bathroom (at specific times that he set) and, after several days, to get herself food. Appellant was also very controlling of his children, especially his daughters, and tended to isolate them. None of the children could have friends over to the apartment, and they were not allowed to go to friends' houses. Neither of the girls were allowed to wear makeup or style their hair, nor were they allowed to have boyfriends or date. In fact, other than their classmates at school, they were not supposed to talk to boys.

Nineteen-year-old OD described an incident that occurred in July 2015 when she was sixteen years old (the summer before her junior year of high school) and her father had

---

[2] The testimony reflected that the girls had complained to their aunt and grandmother about appellant hitting them, and even reported it to a school official at one point but "nothing ever happened with that."

The evidence also showed that in February of 2016, following an incident where appellant hit YD after he found her with a phone, which the girls were not permitted to have, YD ran away. She explained that her "main motivation" was that she "didn't want to continue being out of school and [she] didn't want to be hit again." At that time, the police became involved, interviewed her, and took pictures of her bruises, but "didn't believe [her]."

sexual intercourse with her. OD testified that after appellant asked her to scratch his back, under his shirt, which was a common occurrence, she went to her room to lie down on her bed. Appellant followed her into her room and lay down with her on her twin bed, lying with his front to her back as she lay on her side. He asked her if she had had sex before. When she told him "no," he began "touching [her] inappropriately." Appellant started touching her on the chest and then moved slowly down her body. OD said that when he reached her waist, he pulled her pants down. He touched her "down there" "on [her] vagina" with his hand. OD explained that she "just felt him . . . and then he put it in me." She clarified that appellant "had put his dick inside [her] vagina" and said that she "remember[ed] just wanting to cry." After appellant finished, "he got off of [her]" and went to his room, and she went to the bathroom. As she cleaned herself up, she "saw blood" and "all kinds of stuff." OD said that she did not know what to do; she "was so scared." When she left the bathroom, appellant called her into his room and made her promise that she would not tell anyone. OD testified that she moved out of the apartment in February 2017 the day she turned eighteen—without telling appellant about her plans because he would have stopped her.

Eighteen-year-old YD testified that in the summer of 2017, when she was seventeen years old, her father came to her room one night while she was in bed. He asked if he could play with her skin and then he started "biting" her skin.[3] He began biting the skin on her belly and then "started moving down more." He took off her sweatpants, leaving them on one leg, and bit her thighs and then "moved towards the middle of [her] and then put his mouth on [her]." Appellant then "just started using his fingers and put them inside [her]." YD clarified

---

[3] Both of appellant's daughters explained that appellant has a skin fetish. OD said, "He has this skin problem. He likes to touch skin." YD expressed that "he has this thing with skin, where he likes touching it between his fingers."

4

that appellant put his mouth "on [her] vagina" and confirmed that he "perform[ed] oral sex on [her]." She explained that she "didn't say stop or anything" because she "didn't know how he was going to react" and "we were already so scared of him." She expressed that she "didn't know what to do." After appellant was finished, YD put her pants back on and turned and faced the wall. Her father got on one knee behind her and "had the nerve to ask [her] how it was." YD did not tell anyone what appellant had done to her until she told OD in December of 2017 when they met for lunch and she saw text messages on OD's phone that suggested that appellant had done something similar to OD.

The jury found appellant guilty of both offenses. During the punishment phase, appellant's daughters revealed more of appellant's sexual abuse and violence against them. YD related that appellant had performed oral sex on her twice and both times he put his fingers in her vagina. She said that he would also frequently bite her ear and neck ("intimate bites"), suck on her ear, kiss her with an open mouth and bite her lip, and touch her breast. Once appellant threatened her with his pocket-knife when she did not face the corner during a "time out."[4] YD explained that appellant was violent with everyone in the home "whenever they made him mad," although "not really [her] little brother." Appellant would also regularly damage or throw away their possessions. In addition, YD had "a lot of memories" of appellant being violent with her mother before they divorced.

OD disclosed that the sexual-intercourse incident that she described during the guilt-innocence phase was the first instance of sexual abuse and that it happened "pretty often" after that—three or four times a week. She also described the various ways that appellant

---

[4] In his testimony, appellant referred to placing his children in "time out" as "lockdown." Both of his daughters said that he would tell them he was "the warden."

sexually violated her, saying that in addition to putting his penis in her vagina, he "would finger [her]" and perform oral sex on her and that on one occasion he "tried to stick it inside [her] butt." OD said that appellant never used any sort of protection; she was "always" worried that she would get pregnant. Appellant would pull her hair and slap her and call them "all kinds of messed up names."[5] She explained that the physical abuse was "normal" for "[them] growing up." She also described appellant's destruction of their property, saying he would "throw [their] stuff away" and tear up their clothes and shoes with his pocket-knife. At trial, more than one year after they reported appellant's sexual abuse to police, both of appellant's daughters expressed that they were still afraid of him, had nightmares, and had anxiety issues.

The jury also heard from appellant's ex-wife, who described the violence in their relationship, which included appellant choking her, hitting her, tearing up her clothes, and destroying her possessions. She explained that she did not report his abuse because she was scared that he would hurt her since sometimes he threatened to kill her. Appellant's ex-wife said that the abuse and violence happened "a lot" and that their children saw it. Appellant did not testify or present any punishment witnesses.

The jury assessed a twenty-year prison sentence for each offense. The trial court sentenced appellant consistent with the jury's verdicts. In each cause, appellant filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). These appeals followed.

---

[5] The testimony of both daughters reflected that appellant would call them "bitch" and "whore," and tell them that they were "never going to go anywhere in life."

6

## DISCUSSION

In overlapping points of error, appellant asserts in his first point of error in appeal number 03-19-00278-CR and his third point of error in appeal number 03-19-00279-CR that his trial counsel rendered ineffective assistance by failing to object to leading questions and "damaging inadmissible hearsay" during the guilt-innocence phase of trial. In his second point of error in appeal number 03-19-00278-CR and his fourth point of error in appeal number 03-19-00279-CR, he contends that the trial court commented on the weight of the evidence by defining "reasonable doubt" in the jury charge.

Further, in his first point of error in appeal number 03-19-00279-CR, appellant argues that the trial court erred by failing to include an accomplice-witness instruction in the jury charge. Finally, in his fourth point of error in appeal number 03-19-00279-CR, he asserts that trial counsel rendered ineffective assistance by failing to request an accomplice-witness instruction in the jury charge for prohibited sexual conduct.

### Jury-Charge Error

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Mendez*, 545 S.W.3d at 552; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

7

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury-charge error was preserved in the trial court. *Mendez*, 545 S.W.3d at 552; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury-charge error). If the jury-charge error has not been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, 36.15, as is the case here, reversal is required only if the appellant suffered "egregious harm," "which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *see Almanza*, 686 S.W.2d at 171.

In three points of error, appellant complains about the reasonable-doubt instruction given in both jury charges and about the omission of an accomplice-witness instruction in the jury charge for prohibited sexual conduct.

*Reasonable-Doubt Instruction*

In the jury charge in each case, the trial court included the following statement concerning the State's burden of proof: "It is not required that the Prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt."

In his second point of error in appeal number 03-19-00278-CR and his fourth point of error in appeal number 03-19-00279-CR, appellant contends that the trial court erred in

8

submitting the phrase "It is not required that the Prosecution prove guilt beyond all possible doubt." He asserts that this language, from the "old *Geesa* instructions," constituted a comment on the weight of the evidence because it improperly defined "reasonable doubt."[6] In support of his contention, appellant relies on this Court's opinion in *Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex. App.—Austin 2002, pet. ref'd), and the "evolving" law concerning the trial court's inclusion of non-statutory definitions in the jury charge. *See Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (observing that "a trial judge should, as a general rule, avoid including non-statutory instructions in the charge because such instructions frequently constitute impermissible comments on the weight of the evidence"); *see also, e.g.*, *Green v. State*, 476 S.W.3d 440, 445–46 (Tex. Crim. App. 2015) (holding that trial court erred by giving jury-charge instructions that defined terms "penetration" and "female sexual organ" in prosecution for aggravated sexual assault of child).

---

[6] In *Geesa v. State*, the Court of Criminal Appeals determined that a defendant was entitled to "a full definitional instruction to the jury on reasonable doubt" and expressly adopted a six-paragraph instruction to be "submitted to the jury in all criminal cases, even in the absence of an objection or request by the State or the defendant." 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). The adopted definition included, in its third paragraph, the instruction at issue here: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." *Id.*

In its subsequent interpretation of the *Geesa* instruction, the Court of Criminal Appeals determined that the requirement to include it in the jury charge was "absolute" and "systemic," and that "the failure to submit such an instruction is automatic reversible error" not subject to harm analysis. *See Reyes v. State*, 938 S.W.2d 718, 721 (Tex. Crim. App. 1996).

However, in *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), the court reconsidered the definitional requirement set forth in *Geesa* and *Reyes*, questioning the reasoning in *Geesa* and determining that *Reyes* should be overruled in its entirety. *Id.* at 572–73. The court specifically criticized paragraphs [4] and [5] of the *Geesa* definition, which attempted to define "reasonable doubt" in terms of the type of doubt that would make a reasonable person "hesitate," and to characterize "proof beyond a reasonable doubt" as proof so convincing that one would rely and act upon it "without hesitation." *Id.* at 572; *see Geesa*, 820 S.W.2d at 162.

9

Although the same instruction at issue here was given in *Rodriguez*, appellant's reliance on *Rodriguez* is misplaced. While it is true that this Court observed that the instruction did "state what reasonable doubt is not, and in this sense, is definitional," *see Rodriguez*, 96 S.W.3d at 405, we did not conclude that it was an erroneous instruction because it constituted a comment on the weight of the evidence.[7] Rather, although observing that "the complained-of instruction [did] not appear to be too intrusive upon the 'better practice,'" we concluded that "it should not have been given over objection." *Id.*; *see Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (stating that "the better practice is to give no definition of reasonable doubt at all to the jury").

However, after this Court's opinion in *Rodriguez*, the Court of Criminal Appeals decided *Woods v. State*, in which the jury charge included some of the original *Geesa* instruction language, including paragraph [3], but did not include the objectionable language from paragraphs [4] and [5] that the *Paulson* court criticized. *See* 152 S.W.3d 105 (Tex. Crim. App. 2004). In *Woods*, the defendant did not object to the jury charge at trial; on appeal, he challenged only the inclusion of paragraph [3] of the *Geesa* reasonable-doubt instruction. *Id.* at

---

[7] Concerning our statement that the instruction was definitional, this Court subsequently recognized that our holding "that the paragraph [3] language is definitional and therefore constitutes charge error has been criticized by our sister courts of appeals that have addressed the issue." *Jones v. State*, No. 03-08-00126-CR, 2008 WL 3166316, at *3 (Tex. App.—Austin Aug. 6, 2008, no pet.) (mem. op., not designated for publication); *see, e.g.*, *O'Canas v. State*, 140 S.W.3d 695, 701 (Tex. App.—Dallas 2003, pet. ref'd) (noting that if paragraph [3] defined "reasonable doubt," Court of Criminal Appeals would have so stated in *Paulson*); *Ochoa v. State*, 119 S.W.3d 825, 829 (Tex. App.—San Antonio 2003, no pet.) (recognizing split of authority but deciding language not definitional); *Torres v. State*, 116 S.W.3d 208, 212 (Tex. App.—El Paso 2003, no pet.) (concluding that challenged instruction does not constitute definition of reasonable doubt); *Fluellen v. State*, 104 S.W.3d 152, 164 (Tex. App.—Texarkana 2003, no pet.) (same); *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd) (same); *Brown v. State*, 91 S.W.3d 353, 358 (Tex. App.—Eastland 2002, no pet.) (same); *Carriere v. State*, 84 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (stating that paragraph [3] language is not sort of instruction prohibited by *Paulson*).

10

115. The Court of Criminal Appeals, noting that the instructions did not include the criticized portions of the *Geesa* reasonable-doubt instruction, held that "the trial court did not abuse its discretion by including paragraph [3] of the *Geesa* instruction." *Id.* Several of our sister courts of appeals have thus determined that *Woods* is dispositive of the issue of whether the inclusion of the *Geesa* paragraph [3] instruction in the jury charge is error.[8] We agree and observe accordingly that this Court's opinion in *Rodriguez* has been implicitly overruled by *Woods*. *See Jones v. State*, No. 03-08-00126-CR, 2008 WL 3166316, at *4 (Tex. App.—Austin Aug. 6, 2008, no pet.) (mem. op., not designated for publication); *see also, e.g.*, *Steadman v. State*, 262 S.W.3d 401, 408 (Tex. App.—Waco 2008), *reversed on other grounds*, 280 S.W.3d 242 (Tex. Crim. App. 2009) (recognizing that court's prior decision in *Phillips v. State*, 72 S.W.3d 719, 720 (Tex. App.—Waco 2002, no pet.), which determined that inclusion

---

[8] *See, e.g.*, *Castillo v. State*, No. 05-17-00524-CR, 2018 WL 3583577, at *7 (Tex. App.—Dallas July 26, 2018, pet. ref'd) (mem. op., not designated for publication) (rejecting defendant's complaint that he suffered egregious harm from inclusion of paragraph [3] of *Geesa* reasonable-doubt instruction because "the complained of instruction here is identical to the instruction in *Woods*, and was not among those parts of the *Geesa* charge [that] *Paulson* disapproved"); *Pena v. State*, 554 S.W.3d 242, 256 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citing *Woods* and concluding that trial court did not err in submitting instruction that included paragraph [3] of *Geesa* reasonable-doubt instruction to jury); *Burrows v. State*, 492 S.W.3d 398, 409 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (collecting cases and concluding that "regardless of whether the language [from paragraph [3] of *Geesa* reasonable-doubt instruction] is an 'instruction' or 'definition,' *Woods* and *Mays* confirm that inclusion of this language alone is not error"); *Johnson v. State*, No. 10-14-00263-CR, 2016 WL 1072610, at *7 (Tex. App.—Waco Mar. 17, 2016, no pet.) (mem. op., not designated for publication) (citing *Woods* and concluding that inclusion of paragraph [3] of *Geesa* reasonable-doubt instruction "was not improper"); *Stone v. State*, No. 02-14-00154-CR, 2015 WL 831424, at *3 (Tex. App.—Fort Worth Feb. 26, 2015, no pet.) (mem. op., not designated for publication) (following *Woods* and holding "that the trial court did not abuse its discretion by including paragraph [3] of the *Geesa* instruction in the guilt-innocence phase of the trial"); *see also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (recognizing prior holding that "the better practice" is not to define "reasonable doubt," but relying on *Woods* to reject defendant's argument that inclusion of language of paragraph [3] of *Geesa* reasonable-doubt instruction was error).

11

of *Geesa* paragraph [3] in jury charge was improper, "ha[d] been implicitly overruled by *Woods*").

Furthermore, even if we were to consider the complained-of instruction a "definition" as we did in *Rodriguez*, we cannot conclude that it was an impermissible comment on the weight of the evidence. The Court of Criminal Appeals has explained that

> a judge's innocent attempt to provide clarity for the jury by including a neutral instruction *can* result in an impermissible comment on the weight of the evidence because the instruction "singles out a particular piece of evidence for special attention," which the jury may then focus on as guidance from the judge.

*Beltran De La Torre*, 583 S.W.3d at 617 (quoting *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (emphasis added)); *see, e.g.*, *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (holding that jury-charge instruction defining "operate" in DWI case was impermissible comment on weight of evidence because it "improperly impinged on the jury's fact-finding authority by limiting the jurors' understanding of what evidence could constitute" element of operating); *Bartlett v. State*, 270 S.W.3d 147, 153–54 (Tex. Crim. App. 2008) (rejecting jury-charge instruction stating that jury could consider evidence of defendant's breath-test refusal in DWI case because such instruction served no function other than to "improperly tend to emphasize the evidence of the appellant's refusal to submit to a breath test" and had potential to "obliquely or indirectly convey some [judicial] opinion on the weight of the evidence by singling out that evidence and inviting the jury to pay particular attention to it") (internal quotations omitted); *Brown v. State*, 122 S.W.3d 794, 802–03 (Tex. Crim. App. 2003) (rejecting instruction that "intent or knowledge may be inferred by acts done or words spoken" because while neutral, it focused jury's attention on evidence that might support finding of criminal

intent, improperly told jury how to consider certain evidence, and improperly instructed jury on rule of appellate evidentiary sufficiency review).

Appellant neither explains nor can we discern how the complained-of instruction singled out any particular piece of evidence for special attention or directed the jury how to consider certain evidence. The instruction simply explained the State's burden of proof. It did not suggest, in any way, what type of evidence sufficed to meet this burden or how the jury should consider particular evidence when deciding whether the State's burden had been met.

Appellant here, like the defendant in *Woods*, challenges the trial court's inclusion of paragraph [3] of the *Geesa* reasonable-doubt instruction and, also like the defendant in *Woods*, did not object to the inclusion of paragraph [3] at trial but contends on appeal that its inclusion mandates reversal. Following the holding in *Woods* and perceiving no impermissible comment on the weight of the evidence in the instruction, we conclude that the inclusion of paragraph [3] of the *Geesa* reasonable-doubt instruction in the guilt-innocence jury charges was not error.[9] We overrule appellant's second point of error in appeal number 03-19-00278-CR and his fourth point of error in appeal number 03-19-00279-CR.

*Accomplice-Witness Instruction*

Concerning the jury charge in the prohibited-sexual-conduct case, appellant argues that the trial court erred in failing to include an instruction in the jury charge on corroboration of accomplice-witness testimony.

---

[9] Because we conclude that no error exists in the jury charge, we do not reach appellant's claim that he suffered egregious harm. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).

Texas law provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[.]" Tex. Code Crim. Proc. art. 38.14; *see Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (testimony of accomplice must be corroborated by "independent evidence tending to connect the accused with the crime"). The accomplice-witness statute sets out an "implicit 'If-then' proposition: If the evidence raises an issue of [the witness's status as an accomplice], then the trial court shall instruct the jury [regarding the corroboration requirement]." *Zamora v. State*, 411 S.W.3d 504, 509 (Tex. Crim. App. 2013) (quoting *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008)). In light of the plain statutory language of the accomplice-witness rule, an accomplice-witness instruction is the law applicable to the case. *Id.* at 513.

"An accomplice is a person who participates in the offense before, during, or after its commission and acts with the requisite mental state." *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011); *accord Druery*, 225 S.W.3d at 498. An accomplice "must have engaged in an affirmative act that promotes the commission of the offense that the accused committed." *Smith*, 332 S.W.3d at 439; *accord Druery*, 225 S.W.3d at 498. A witness may be an accomplice as a matter of law or as a matter of fact. *Smith*, 332 S.W.3d at 439; *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006).

Appellant maintains that his younger daughter, YD, was an accomplice to the prohibited sexual conduct and thus her testimony required corroboration under the accomplice-witness statute. He relies primarily on *Bolin v. State*, in which the Court of Criminal Appeals stated nearly 50 years ago that "[i]t is the established rule that a female who consents to or voluntarily enters into an incestuous intercourse is an accomplice witness." 505 S.W.2d 912,

14

913 (Tex. Crim. App. 1974). However, in *Bolin*, the court also recognized that "[c]onversely, if the act is the result of force, threats, fraud, or undue influence, she is not an accomplice witness." *Id.*; *accord Brown v. State*, 657 S.W.2d 117, 118 (Tex. Crim. App. 1983); *Wilson v. State*, 184 S.W.2d 141, 142 (Tex. Crim. App. 1944).

The evidence at trial showed that appellant physically and psychologically abused YD for years and that she lived in fear of him. The evidence further showed that when appellant engaged in deviate sexual intercourse with her, she "didn't say stop or anything" because of that fear. The children's accounts of appellant's conduct revealed his dominance over YD—an abused child who had not yet reached the age of majority and was living under his roof—and substantiated her fear of him. When we view the evidence in this case "in the light most favorable to the State," *see Brown*, 657 S.W.2d at 118, the evidence showed that YD was compelled to participate in incestuous deviate sexual intercourse with appellant through the use of force, threats, or undue influence. Thus, we conclude that the evidence demonstrated that YD was not a willing participant in the prohibited sexual conduct with her father and therefore was not an accomplice. *See id.* (reaffirming that "if the incestuous intercourse is compelled by force, threats, fraud or undue influence, the victim is not an accomplice witness"); *see also Zamora*, 411 S.W.3d at 510 (describing accomplice as individual who "participates with a defendant before, during, or after the commission of the crime," "acts with the requisite culpable mental state,"[10] and performs an "affirmative act that promotes the commission of the offense with which the defendant is charged" (quoting *Cocke*, 201 S.W.3d at 748)); *see also Blake*

---

[10] For purposes of the offense of prohibited sexual conduct, "deviate sexual intercourse" means "any contact between the genitals of one person and the mouth or anus of another person *with intent to arouse or gratify the sexual desire of any person*." Tex. Penal Code § 25.02(b)(1) (emphasis added).

15

*v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) (describing accomplice as "a blameworthy participant").

"[W]hen the evidence clearly shows that a witness is not an accomplice, the trial judge is not obliged to instruct the jury on the accomplice witness rule—as a matter of law or fact." *Smith*, 332 S.W.3d at 440 (citing *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987)). Because the evidence here established that YD was not an accomplice but was a victim whose testimony did not require corroboration, the trial court did not err by not including an instruction on accomplice-witness corroboration in the jury charge.[11] We overrule appellant's first point of error in appeal number 03-19-00279-CR.

---

[11] We observe that the Texarkana Court of Appeals reviewed the history of the prohibited-sexual-conduct statute and has concluded that "the rule in *Bolin* is no longer applicable because the incest statute in effect when the rule was adopted was amended in 1973, thereby superseding the *Bolin* case." *Phelps v. State*, 532 S.W.3d 437, 442 (Tex. App.— Texarkana 2017, pet. ref'd). In *Phelps v. State*, the Texarkana Court concluded that "[t]here is no longer a statutory presumption that the complaining witness was an accomplice unless the State proves that she was not." *Id.* at 446–447. The Court noted that the language in the former version of the statute "effectively presumed that the parties were perpetrator and accomplice (or co-perpetrators)," determined that the 1973 amendment eliminated that presumption, and explained that the statute's amended language "reflects the seismic shift in the law regarding sexual assault cases between 1885 and the 1970s" and that "[t]his is particularly so when the incestuous act is between a parent and child, beginning in childhood and continuing into adulthood." *Id.*

We need not decide here whether the *Bolin* rule survived the 1973 amendment to the statute because the evidence in this case clearly demonstrated that YD was not an accomplice to the prohibited sexual conduct perpetrated by her father, but we find the *Phelps* opinion persuasive and note the opinion here because the Texarkana Court's recognition of the "seismic shift" in the treatment of sexual-assault victims in our criminal justice system is a harsh reminder that the past treatment of sexually abused children too often failed to account for the dynamics involved in child sexual abuse and seems, at times, to have been abusive in its own way, adding insult to injury. *See, e.g.*, *Bolin v. State*, 505 S.W.2d 912, 913 (Tex. Crim. App. 1974) (concluding that thirteen-year-old daughter, who testified that her father had sexual relations with her since she was ten and would "reward" her with "money or hamburgers or money for groceries or the things the children would . . . want" in order to get her to have sex with him, was accomplice whose testimony required corroboration); *Freeman v. State*, 11 Tex. Ct. App. 92, 94–95

## Ineffective Assistance of Counsel

In his first point of error in appeal number 03-19-00278-CR and his second and third points of error in appeal number 03-19-00279-CR, appellant asserts that his trial counsel rendered ineffective assistance by failing to object to leading questioning and "damaging inadmissible hearsay" and by failing to request an accomplice-witness instruction in the jury charge for prohibited sexual conduct.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have

(1881) (reversing incest conviction for lack of jury-charge instruction on accomplice testimony even though twelve-year-old girl testified that when her stepfather had intercourse with her twice, she did not want him to do it and it hurt her very much).

"Under section 25.02, as it exists today, evidence merely establishing that the complainant was an adult and failed to complain or resist is not sufficient to establish that an incest victim was an accomplice." *Phelps*, 532 S.W.3d at 448–49; *cf. Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (stating that "[a] person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it"). "Rather, there must be affirmative proof establishing the complaining witness willingly participated in the act of sexual intercourse upon which the prosecution is based." *Phelps*, 532 S.W.3d at 448–49 (citing *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) ("To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged.")); *see also Smith*, 332 S.W.3d at 439 (explaining that "accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed").

been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *accord Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013); *see Strickland*, 466 U.S. at 689. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308; *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (observing that record on direct appeal "is generally insufficient to show that counsel's performance was deficient"). If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

*Leading Questions and Hearsay*

Appellant maintains that his trial counsel "failed to provide reasonably effective assistance by failing to object, or failing to timely object" to leading questions and hearsay testimony that the State purportedly propounded to and elicited from YD. His complaints relate

18

to her testimony about seeing text messages on her sister OD's cell phone, which prompted her to disclose appellant's sexual abuse against her. The following occurred when YD was testifying about what happened during a lunch with OD after OD had moved out:

| | |
|---|---|
| Witness: | . . . I was looking through her phone and I was — I was looking at pictures, you know, to see what she was doing. |
| | And then I saw text messages between her and my dad, and she had said — she was telling him: You took something from me I'll never get back. |
| Appellant: | I'm going to object to the hearsay testimony, Your Honor. |
| The Court: | You can't say what someone else told you. |
| Witness: | Okay. |
| Appellant: | I would ask — |
| Witness: | It's what I read. |
| Appellant: | I'd ask that be struck and the jury — |
| The Court: | Will disregard that last answer. I'll sustain the objection. That is hearsay. You can't repeat what somebody else said. |
| Witness: | Okay. |
| The Court: | If you will repeat the question, please. |
| Prosecutor: | So you're looking in her cell phone? |
| Witness: | Yes. |
| Prosecutor: | And you come across text messages? |
| Witness: | Yes. |
| Prosecutor: | What did you — what did you say to [OD] at that moment? |

19

| Witness: | At that moment, I had asked her if this was happening. And then I started crying and I told her, I was, like: Something like this is happening to me, too. And . . . |
|---|---|
| Prosecutor: | And y'all were talking about sexual acts by your dad? |
| Witness: | Yes. And I started crying and I told her exactly what he was doing, or what he had done. It wasn't, like, every day. It was just . . . |

The testimony continued with a description about what happened after YD's disclosure of appellant's sexual abuse to her sister.

Appellant complains about trial counsel's untimely objection—which, we note, resulted in an instruction to the jury to disregard the testimony about the text message, *see Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (recognizing that "[o]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer"); *see also Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (acknowledging "the usual presumption that jurors follow the trial court's explicit instructions to the letter"); *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (explaining that courts "generally presume that a jury will follow the judge's instructions")—and the subsequent failure to object to the prosecutor's purported leading questions and YD's alleged hearsay responses. He maintains that "[n]o plausible purpose was served by Appellant's counsel's failure to make a timely hearsay objection" and that the "fail[ure] to object to the damaging hearsay testimony after the trial court had sustained the untimely objection clearly served no purpose."

In these cases, although appellant filed a motion for new trial, he did not raise a claim of ineffective assistance of counsel in either motion. Thus, the record is silent as to trial

counsel's reasons for not timely objecting or not objecting to this now complained-of questioning or testimony.

When the record is silent as to defense counsel's strategy, we will not guess at counsel's trial tactics or speculate about the reasons for taking certain actions or not taking others. *See Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011) ("[T]he court must not engage in retrospective speculation."). Indeed, such speculation could just as easily support the notion that trial counsel acted reasonably and competently in making the decisions now forming the basis for appellant's failure-to-object ineffective-assistance claims.

Moreover, appellant does not indicate which questions of the exchange he believes were improperly leading. *See Newsome v. State*, 829 S.W.2d 260, 269 (Tex. App.—Dallas 1992, no pet.) (noting that "the mere fact that a question may be answered by a simple 'yes' or 'no' will not render it an impermissibly leading question") (citing *Hodges v. State*, 299 S.W. 907, 908 (Tex. Crim. App. 1927)). However, even if some questions were leading, we observe that "[a]lthough leading questions are objectionable, sound trial strategy may dictate that the practitioner refrain from lodging such objections." *Bates v. State*, 494 S.W.3d 256, 276 (Tex. App.—Texarkana 2015, pet. ref'd).

As for the alleged hearsay, counsel could have concluded that YD's testimony about her sister's text messages was not in fact hearsay evidence because it was not offered for the truth of the matter asserted, but rather to explain how YD's disclosure of appellant's sexual abuse of her, OD's subsequent disclosure to their aunt, and the report to law enforcement came about. *See Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999) (recognizing that "a statement which is not offered to prove the truth of the matter asserted, but is offered for some other reason, is not hearsay"); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)

21

(explaining that "[a]n extrajudicial statement . . . which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay"); *see also Atkinson v. State*, 564 S.W.3d 907, 913 (Tex. App.—Texarkana 2018, no pet.) ("The failure to object to admissible evidence is not ineffective assistance.").

And finally, since OD had already testified about appellant's sexual assault of her and that, after a lunch conversation with her younger sister, she became concerned that the same thing might have happened to YD, counsel could have decided that the impact of YD's testimony about the fact that they had a conversation about "sexual acts by [her] dad" was negligible given its general nature, which followed the detailed descriptions of the sexual abuse OD already had given. There may have been strategic reasons for not objecting in this instance, and we may not speculate on counsel's motives in the face of a silent record. *See Ortiz v. State*, 93 S.W.3d 79, 95 (Tex. Crim. App. 2002) (suggesting strategic reasons for counsel's failure to object to hearsay); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (declining to speculate on counsel's failure to object to hearsay in light of silent record).

Appellant's assertions that counsel's conduct had "no plausible purpose" and "clearly served no purpose" are mere speculation. Such speculation does not constitute a demonstration, founded in the record, that no reasonable trial strategy existed. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) (affirming that counsel's alleged deficiency "must be affirmatively demonstrated in the trial record"). Ultimately, we do not know why trial counsel did not object to the questioning or testimony with which appellant now takes issue. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort

22

Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd); *see also Lopez*, 343 S.W.3d at 143.

On this record, appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsel's decisions, the complained-of conduct does not compel a conclusion that counsel's performance was deficient. As indicated above, we cannot say that "no reasonable trial strategy could justify" counsel's decision to engage in the complained-of conduct. *See Lopez*, 343 S.W.3d at 143. We cannot conclude that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592; *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel."). Accordingly, we conclude that appellant has failed to demonstrate deficient performance on the part of his trial counsel as to his complaint about the failure to timely object or to object to leading questions and "damaging inadmissible hearsay."

*Accomplice-Witness Instruction*

Appellant also contends that his trial counsel rendered ineffective assistance by failing to request the inclusion of an accomplice-witness instruction in the jury charge for prohibited sexual conduct because such an instruction "was law applicable to the case."

To demonstrate deficient performance based on the failure to request a jury instruction, an appellant must show that he was entitled to the instruction. *Guzman v. State*, 539 S.W.3d 394, 407 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Davis v. State*, 533 S.W.3d 498, 513 (Tex. App.—Corpus Christi-Edinburg 2017, pet. ref'd); *Washington*

23

*v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004); *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).

As we explained in appellant's related complaint asserting jury-charge error based on the trial court's purported failure to include an accomplice-witness instruction, because YD was compelled to participate in the incestuous deviate sexual intercourse with appellant through the use of force, threats, or undue influence, she was not an accomplice to the prohibited sexual conduct. Therefore, the evidence did not authorize the submission of an accomplice-witness instruction, either *sua sponte* by the trial court or on appellant's request, in the jury charge. Accordingly, appellant has not demonstrated that his counsel was in error, much less deficient, for failing to request an accomplice-witness instruction in the jury charge for prohibited sexual conduct. *See, e.g.*, *Kinnamon v. State*, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990) (since evidence did not authorize submission of murder instruction as lesser-included offense at defendant's trial, counsel was not ineffective for failing to request it), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994).

*Conclusion on Ineffective-Assistance Claim*

On the record before us, we conclude that appellant has failed to demonstrate constitutionally deficient performance on the part of his trial counsel. *See Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would

24

have engaged in it.'" (quoting *Goodspeed*, 187 S.W.3d at 392)). Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *Lopez*, 343 S.W.3d at 144; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

We overrule appellant's first point of error in appeal number 03-19-00278-CR and his second and third points of error in appeal number 03-19-00279-CR.

### Error in Judgment

On review of the record, we observe that the written judgment of conviction for prohibited sexual conduct contains non-reversible error.

The judgment states that the "Statute for Offense" is "25.02(c) Penal Code." This statutory provision of the Penal Code establishes that the offense of prohibited sexual conduct as charged in this case is a second-degree felony. However, the applicable statutory provisions for the offense for which appellant was convicted also include section 25.02(a)(1) of the Penal Code, the statutory provision that defines the offense of prohibited sexual conduct charged in this case. *See* Tex. Penal Code § 25.02(a)(1) (providing that person commits offense if person "engages in . . . deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy the actor's . . . descendant by blood").

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the trial court's written judgment of

25

conviction for prohibited sexual conduct to reflect that the "Statute for Offense" is "25.02(a)(1), (c) Penal Code."

## CONCLUSION

Having concluded that no error exists in either jury charge and that appellant failed to demonstrate that he received ineffective assistance of counsel, we affirm the trial court's judgment of conviction for sexual assault of a child. Having found that the written judgment for prohibited sexual conduct contains non-reversible error, we modify that judgment as set out above and, as so modified, affirm the trial court's judgment of conviction for prohibited sexual conduct.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

03-19-00278-CR:     Affirmed

03-19-00279-CR:     Modified and, as Modified, Affirmed

Filed:   April 29, 2021